807 So.2d 295 (2001)
STATE of Louisiana
v.
Walter NOIL.
No. 01-KA-521.
Court of Appeal of Louisiana, Fifth Circuit.
December 26, 2001.
*298 Frank G. DeSalvo, Harry J. Boyer, Jr., Frank G. DeSalvo, APLC, New Orleans, LA, Counsel for Walter Noil, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, (Appellate Counsel), Richard C. Bates, (Trial Counsel), Assistant District Attorneys, Gretna, LA, Counsel for the State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
*299 CHEHARDY, Judge.
Walter Noil appeals his conviction of cruelty to a juvenile. We affirm.
On January 6, 2000, the Jefferson Parish District Attorney filed a bill of information charging that Walter Noil, on or about July 7, 1999 violated La.R.S. 14:93, "in that he did commit cruelty to a juvenile age eight by punching the child and/or forcing the child to kneel on raised nails and/or depriving the child of proper nutriention [sic] and/or dropping the child on his head." Defendant entered a plea of not guilty. On May 29, 2000, the State amended the bill of information to state that the cruelty to the juvenile occurred between July 7, 1999 and July 9, 1999, instead of on or about July 7, 1999.
After two days of trial, a six-member jury found defendant guilty as charged on May 31, 2000. On June 14, 2000 defendant's trial counsel filed a motion for new trial and, in the alternative, post-verdict judgment of acquittal. On that same date, defendant's appellate counsel enrolled as counsel of record. On October 10, 2000, the new counsel filed a motion for new trial, which was denied on October 16, 2000.[1]
On June 19, 2000 the State filed a habitual offender bill of information alleging defendant to be a triple-felony offender, which later was amended down to a double bill. Defendant denied the allegations of the multiple bill on October 31, 2000 and filed a motion for reconsideration of his motion for new trial. The motion for reconsideration was denied on the same day. On that date the trial court sentenced defendant to imprisonment at hard labor for seven years, with credit for time served.
Defendant filed a timely motion for appeal that was granted on November 6, 2000.[2] On March 8, 2001 defendant admitted the allegations of the multiple bill. The trial court vacated the original sentence and sentenced defendant to imprisonment at hard labor for five years without benefit of probation or suspension of sentence, with credit for time served.

FACTS
The State's first witness was Carlas Johnson, a Child Protection Investigator with the Office of Community Services (OCS). She stated that on July 9, 1999, OCS received a complaint that S.R., age eight, was home alone with two slices of bread, a glass of water and a glass of milk. She went to the home to assess the situation and S.R.'s well-being. When she arrived on the scene, a trailer home, S.R. and a detective were present. Johnson learned from the detective that S.R. had been left alone and that his mother and father were at work.[3] Johnson testified that S.R. had visible signs of abuse and neglect, meaning that he had scars all over his body from various objects, he could explain how the scars were acquired, and he was small. Johnson testified that S.R. said the injuries came from his father.
*300 Johnson testified that State's Exhibits 1 through 6, which were photographs, accurately depicted S.R.'s appearance on July 9, 1999. Exhibits 9 and 11 showed S.R. with scars to his body, arms, chest area, and lip. She found a glass of milk, a glass of water and a slice-and-a-half of bread in S.R.'s bedroom, which were accurately depicted in Exhibit 8. Exhibit 7 showed a floor with the heads of nails sticking up that accurately reflected the entrance to S.R.'s cluttered bedroom. S.R. told her he was made to kneel there. Johnson noticed scars on S.R.'s knees, but did not know what caused the scars; she saw no blood on his knees. Johnson stated that the majority of his injuries were old.
After Johnson conducted the home inspection, she made contact with S.R.'s parent to obtain permission to remove him from the home. She took S.R. to get something to eat and placed him with a maternal aunt. Johnson then referred the case to a Family Services worker, who continued to service the family.
Detective Jo Lynn Cummings of the Jefferson Parish Sheriffs Office Personal Violence Unit testified that on July 9, 1999, the road deputy responded to a call involving an eight-year-old male, later identified as S.R., who said that he had been punched in the chest, picked up by his ankles, dropped on his head, slapped in the face, and had only eaten bread, milk and water for two or three days.
Cummings testified she was the case officer assigned to conduct the follow-up investigation. During the investigation, Cummings obtained a verbal statement from S.R. and a statement from Sonya Noil, S.R.'s mother. Cummings later obtained a statement from Walter Noil, defendant, after he signed a waiver of rights form.
Cummings said that after defendant gave the statement, he was placed under arrest and charged with cruelty to a juvenile. Cummings testified that in his statement defendant admitted he placed the child on his knees in his room and that he was aware of the nails, although defendant did not say whether he made the child kneel on the nails.
According to Cummings, defendant also admitted that he punished the child by giving him bread, water and milk. He denied all other allegations made by the victim. Cummings testified that she did not recall seeing scarring on S.R.'s knees, but that S.R. had several sores and "quite a few" scrapes all over his body.
Sonya Noil, who was called as a witness by the State, testified she is the mother of S.R. and the wife of defendant, Walter Noil. She stated that on Wednesday, July 7, 1999, at approximately 3:15 p.m., she came home from work and saw S.R. coming out of the restroom and going back into his room. Noil testified her husband informed her that he told S.R. to kneel on his knees, because S.R. had eaten pizza in "a manner that wasn't appropriate." (She indicated that the child had taken one bite out of each slice of pizza.) S.R. stayed on his knees until approximately 4:00 p.m.
Noil said that her husband had also punished S.R. later that evening by giving him bread, water and milk as his evening meal. Noil testified that she did not see S.R. the next morning, Thursday, because she went to work, but that S.R. had the same meal that night as well. She and her husband agreed that feeding S.R. bread and water for the evening was sufficient punishment, rather than disciplining him with a spanking or by putting him on his knees. She did not know whether S.R. had anything else to eat on that day.
Noil stated she thought bread, milk and water was sufficient nourishment for S.R. for Wednesday evening through Friday *301 morning. She stated that S.R. told her the defendant had "grazed" him across the face and that S.R. said his nose was bleeding because he had been "flipping" on his bunk bed. S.R. also told her that defendant had punched him in the chest in the past, but not between July 7 and 9, 1999. She thought her son was lying when he told her that defendant had grazed him across the face. She stated that she was not afraid of her husband, but admitted that he had physically assaulted her in the past.
Noil testified that S.R. had atopic dermatitis that left marks on his body, in the creases inside his arms, and on the backs of his knees. She said that when he scratched those areas and touched other areas, the same marks appeared on those other areas. According to Noil, S.R. had sores on his knees from the atopic dermatitis prior to being placed on his knees for punishment. Noil circled the marks and bruises on S.R.'s body on Exhibits 10, 12, 13 and 14 that she said were caused by sports injuries or by scratching himself.
When the State called S.R. to testify, the boy said he called the police from his bedroom in July of 1999 because he was being punished for lying and disobeying and couldn't do some of the things he wanted to do. He testified, "I wasn't suppose [sic] to eat the pizza unless someone told me that I could, because there were other things that I could have eaten instead of the pizza, and I ate the pizza without permission." He said he was punished by being given two slices of bread, a cup of water, and milk; he said it was just for a couple of hours. He said that was the first time he had ever been given that type of punishment.
S.R. testified that before his father left for work, he gave S.R. some cereal and an orange and the bread and water. S.R. stated that he was able to go and get something else to eat if he finished the bread and water. S.R. stated that his mother and father did not give him any other kind of punishment for lying and disobeying other than eating the bread, milk and water. He denied that anyone spanked him, struck him, made him get down on his knees, picked him up or threw him for eating the pizza. He denied that anyone hit him in the face or caused him to have a "busted lip" and a bloody nose and denied that anyone ever picked him up by the ankles and dropped him.
He claimed he did not remember ever telling anybody that any of those things happened. He remembered the police coming to his house, but he said he did not remember what he told them. He recalled Johnson's coming to the house, but also claimed he did not remember what he told her. He said he did not recall telling anyone that defendant punched him in the chest and neck area several times, picked him up and dropped him down onto the floor head first and threw him onto the sofa after getting angry with him for eating the pizza. S.R. stated that he did not remember telling anyone that defendant made him kneel down on nails that were sticking out of the floor after getting angry with him for eating pizza. He testified he did not remember telling anyone that defendant made him eat bread and drink water and milk because he ate the pizza. He also said he did not recall telling the police that he "couldn't take any more." He remembered speaking with the prosecutor about the case, but stated, "I don't remember what I said."
S.R. said he lived with his aunt after he called the police, but that he saw his mother and father on weekends. He testified that on the day of trial he came to court with his mother, father and his grandmother.
*302 Asked whether any of the things happened about which the prosecutor was questioning him, S.R. said, "No."
Q. When is the first time you told me that that did not happen? Do you remember that?
A. I think it was earlier today.
Q. Okay. And that wasn't the first time that I spoke with you, right, about this case?
A. I don't ...
Q. Do you remember whether, on any other time that we sat down and talked about this case, that you told me that these things did not happen? Do you remember ever telling me that before today?
A. No.
S.R. reviewed Exhibits 9, 10, 11, 12, 13 and 14 and testified that the police officer took them because he had a hickey on his head and an injured lip, which he said he got from hitting the rails while "flipping" on his bunk bed-he said he was flipping on the rails and hit his head on it. He said his lip "got busted" and his knee hit it another time when he was flipping on it. S.R. stated that all of the other marks on his body shown in the photographs were caused by his skin problem.[4]
When defense counsel began cross-examination and asked S.R., "Do you remember any incident that happened between you and your dad?", S.R. began crying. The judge asked S.R. repeatedly, "Are you afraid?" but S.R. did not respond to those questions. When the judge asked him, "You don't want to talk?" S.R. motioned with his head.
Omalee Gordon, a Gretna police officer assigned to the Jefferson Parish Children's Advocacy Center, testified that she conducted a videotaped interview of S.R. on July 14, 1999. She stated that the videotape accurately reflected the interview that took place between her and S.R. The videotape was played for the jury.
In the videotape, S.R. told Gordon that the Wednesday before the interview, his mother and father (defendant) went to work and left him at home by himself. When his father came home, he saw that S.R. had not eaten all of his pizza and his father became angry. S.R. said that his father punched him in the chest twice with his fist; picked him up by the neck and held him up to the ceiling; picked him up by the shirt and held him up to the ceiling; picked him up by his foot and dropped him on his head; and slapped him across the face, which made his nose bleed and cut his lip. S.R. stated that his father made him kneel on the heads of nails sticking up on the floor of his room for four hours while his father and mother were out looking for a car. His father also allowed him to eat only three slices of bread and drink some water and one glass of milk. When his mother and father returned, his father let him go to the bathroom and then made him kneel on the nails again.
S.R. stated that about two months before the interview, his father "whooped" him with a leather belt that left scars. He said his father did this because S.R. had missed the bus. S.R. said that his father had whipped him with a leather belt many times before on the skin of his back, buttocks and legs. His mother saw this and told his father that he didn't have to whip S.R. that much, but his father told his mother to "shut up" because it was "none of her business."
*303 On the videotape S.R. said that he and his family lived in Pensacola, Florida before moving to Louisiana. He said that his father punched him, picked him up and dropped him on his head, whipped him with a leather belt, hit him with a piece of wood with nails in it, and gave him only bread to eat while they were living in both Florida and Louisiana. In Florida, his father made him kneel on sandpaper with dried rice because there were no nails on the floor. S.R. said his mother saw defendant do many of these things, but said nothing. S.R. told his "Auntie Lynn" about the abuse. When he couldn't "take it anymore," he called the police.
After the videotape was played, S.R. was recalled to the witness stand for cross-examination. S.R. testified that he lied when he told the police and Gordon that his father, defendant, had slapped him and made his nose bleed, picked him up by his ankle and dropped him on his head, punched him in the chest and made him kneel on nails. He said he told the police those things because he was "mad" at his father, who would not let him do some of the things he wanted to do or go places he wanted to go. He said he did not know that his father would be arrested and prosecuted. He said he did not want his dad to go to jail, he "was just mad." S.R. denied that his father had done each of the specific actions that he had described in the videotaped interview.
S.R. testified that his father "whooped" him sometimes and that his mother "whooped" him most of the time. S.R. stated that he "never had to get down on his knees." He testified that his mother was lying when she said that she came home and saw him down on his knees and when she said that she and his father discussed punishing him by giving him bread, water and milk over the course of a couple of days. He also stated that all of the marks on his body in the photographs came from scratches except the marks on his back. He said that happened because his father tried to hit him on his buttocks, but he moved and his father hit him on his back.
Asked why he had not told the district attorney that he was lying about his father, he said he was scared. He denied that his mother and father had spoken to him about the case or that they had told him to say anything or told him that if he said certain things his father would be taken to jail. Asked why he did not tell the whole story earlier, S.R. said, "I don't know." He denied that he was trying to protect his dad and said he would not lie, but then was unable to explain why he apparently lied before.
Dr. Scott Benton testified for the State as an expert in the field of forensic pediatrics. In his examination of S.R. on July 12, 1999, Dr. Benton noted that there were numerous pattern scar injuries called "loop marks," which look like C-shaped marks, on S.R.'s right back flank and buttocks. He testified that those marks were a fairly characteristic pattern mark for a whipping. Dr. Benton stated that wrapping around to S.R.'s front were a more characteristic pattern of squared-off lesions, consistent with the end of a belt buckle. Benton stated that S.R. told him the injuries to his right back flank, back, and buttocks were caused by his father whipping him.
Dr. Benton noted that S.R. had a skin disorder called atopic dermatitis, but the marks and scars he noted were not caused by S.R.'s skin condition. Dr. Benton testified that the loop marks on S.R.'s body were shown in Exhibits 9, 12, 13 and 14. He stated that the loop marks extended all the way down the buttocks, but were hidden in the photographs by S.R.'s pants.
In Dr. Benton's opinion, the loop marks were not inflicted in an accidental manner. *304 Dr. Benton said S.R. impressed him as a child who had been abused; there was no question about that in his mind. He testified that being punched in the chest and throat, thrown around, dropped on one's head and forced to kneel for an extended period of time was abusive. In addition, he considered being given five slices of bread over the course of a day, two glasses of water, and one cup of milk abusive or maltreatment.
Dr. Benton stated that a certain degree of kneeling was acceptable punishment, but that kneeling on nails or rice or prolonged kneeling was "torture." Dr. Benton testified that the withholding of food over days is also unacceptable. He considered that all the marks he saw on S.R.'s body were old. He estimated it took about a week to a week-and-a-half for such injuries to heal. The marks on S.R.'s body indicated an intent to hit, according to Dr. Benton. He said S.R. was not undernourished.
The doctor said that S.R.'s scars were permanent. Dr. Benton testified that S.R. impressed him as a child who had been abused and he had no question in his mind about that. Benton stated that the marks and scars he noted on S.R.'s body were not caused by S.R.'s skin condition and that the skin condition was only in S.R.'s inner elbows and the backs of his knees. He opined that the marks on S.R.'s body indicated an intent to hit and were not caused accidentally. Benton commented that all of the marks he saw on S.R.'s body were "old"; he said it took about a week to a week-and-a-half for injuries to heal. There was no testimony regarding when these whippings and spankings occurred.
Defendant, Walter Noil, testified on his own behalf. He said he is S.R.'s stepfather and that S.R. has resided with him since the age of five or six. Noil said he had spanked his son to discipline him but had never beaten him. He reviewed Exhibits 12, 13 and 14 and noted the loop marks on S.R.'s body, but testified he did not know how his son sustained those marks. He said the boy's mother did most of the disciplining.
Noil testified that his son was not punished on July 9, 1999 for eating a pizza, but because of "some of the things he was doing." He gave his son the milk, bread and water rations on Wednesday afternoon after the pizza incident occurred. On Thursday morning he gave the boy some cereal, fruit, and more bread, milk and water. Noil admitted that S.R. was on his knees briefly Wednesday. On Thursday afternoon, Noil gave him more bread and water as a punishment; Noil claimed he did not like to spank his son even though he (Noil) was spanked as a child with a belt. Noil testified that his daughter and son, his biological children, also lived with them.
Noil said he wasn't aware of how S.R. sustained his injuries, including his injured lip, until he heard about it in the courtroom. He testified that the Social Services people had been calling their home since January asking if they wanted S.R. back. His wife told them yes. Noil and his wife had to take parenting classes before S.R. could come home, which they did. They saw S.R. whenever he wanted to come over and on the weekends.
Noil testified that he never punched his son in the chest, nor did he pick him up by his feet and drop him on his head, nor did he grab him around the neck and hold him up to the ceiling, nor did he ever place S.R. on his knees for four hours or more, nor did he place S.R. on nails. Noil testified that some of S.R.'s injuries were from playing sports.
On cross-examination, Noil admitted that he had two felony convictions for possession *305 of cocaine. One of the convictions took place on December 11, 1991; he did not recall the date of the other. He admitted that he also had been found to be a convicted felon in possession of a firearm, but did not remember when that occurred. He testified further that he had been taken to jail twice following arguments with his ex-girlfriend and his wife, after the women had called the police. Noil testified that he had no other convictions.
Noil said that S.R. was lying when he said that Noil never made him kneel on his knees. Noil admitted that he had spanked S.R. with a belt on his buttocks before. He stated that the first time he put S.R. on milk, bread and water rations was the day of the pizza incident. However, in his statement Noil said that he responded "maybe once or twice" when asked if he had ever given S.R. milk, bread and water as a punishment.
Defendant has raised issues on appeal regarding sufficiency of the evidence, erroneous admission of evidence, defects in the bill of information, and ineffective assistance of counsel.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, 834.
If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the trial court's error requires a reversal of the conviction or was harmless. State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339.

ASSIGNMENT OF ERROR NUMBER ONE

The jury convicted appellant without sufficient evidence and without due process.
Defendant argues that the evidence was legally insufficient to convict him of cruelty to a juvenile. Specifically, he contends that the State did not introduce any evidence whatsoever to prove the allegations of the bill of information and the essential elements of the crime.
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988). A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id. The actual trier of fact is presumed to have acted rationally until it appears otherwise. Id.
La.R.S. 15:438 provides that in a case involving circumstantial evidence, "assuming *306 every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In the instant case, the bill of information alleged the following:
Walter Noil ... between the 7th day of July and the 9th day of July 1999 ... violated R.S. 14:93 in that he did commit cruelty to a juvenile age 8, by punching the child and/or forcing the child to kneel on raised nails and/or depriving the child of proper nutriention [sic] and/or dropping the child on his head[.]
Defendant was convicted of cruelty to juveniles, a violation of La.R.S. 14:93, which provides in pertinent part:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.
In State v. Jackson, 98-1254 (La.App. 5 Cir. 3/30/99), 733 So.2d 657, this Court set forth the law regarding cruelty to juveniles as follows:
The term "intentional" as used in La. R.S. 14:93 refers to general criminal intent, "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."... Thus, La. R.S. 14:93 requires general criminal intent to mistreat or neglect to cause the child unjustifiable pain and suffering....
An alternative to proving that an accused intentionally mistreated or neglected a child, La. R.S. 14:93 permits the state to prove the defendant was criminally negligent in his or her mistreatment or neglect of the child. Criminal negligence "exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." ... Unlike general or specific criminal intent, criminal negligence is essentially negative.... Rather than requiring the accused intended the consequences of his actions, criminal negligence is found from the accused's gross disregard for the consequences of his actions....
But ordinary negligence does not constitute proof of criminal negligence, and the state is required to show more than a mere deviation from the standard of ordinary care. [Citations omitted.]
State v. Jackson, 733 So.2d at 661.
Mistreatment as used in this statute means "abuse." State v. Comeaux, 319 So.2d 897, 899 (La.1975).
The jury instructions in this case varied somewhat from La.R.S. 14:93 and are as follows:
Cruelty to juveniles is the intentional mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to the child. Defendant's lack of knowledge of the child's age is not a defense. Thus, in order to convict the defendant of cruelty to juveniles, you must find:

*307 1. That the defendant intentionally or in a criminally negligent manner, mistreated or neglected the child by punching him and forcing him to kneel on raised nails, and/or depriving the child of proper nutrition, and/or dropping the child on his head; and
2. That the defendant was over seventeen;
3. That the child was under seventeen;
4. That the defendant's intentional mistreatment or criminal neglect caused the child unjustifiable pain or suffering.
In the first paragraph of the instructions, the words "or criminally negligent" after the word "intentional" were omitted; however, in subparagraph number one, the words "or in a criminally negligent manner" were reinserted and the paragraph lists only the incidents alleged in the bill of information.
A review of the record reveals that, due to the child's recanting of the allegations made in his video interview, the evidence was insufficient to convict defendant of cruelty to a juvenile by punching the child, forcing him to kneel on raised nails, and/or dropping him on his head, as listed in the bill of information. However, the evidence was sufficient for the jury to find defendant guilty of cruelty to a juvenile by depriving him of proper nutrition.
In the videotaped interview S.R. described all the things listed in the bill of information, but at trial he recanted his statements made in the videotape. The videotaped interview was not made under oath. A prior inconsistent statement of a witness cannot be used as substantive evidence of a defendant's guilt. State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065, 1069; State v. Washington, 98-69 (La.App. 5 Cir. 1/26/99), 727 So.2d 673, 677. Thus, only S.R.'s trial testimony can be used as substantive evidence.
At trial S.R. testified that on Wednesday, his father gave him two slices of bread, a cup full of water and milk for a couple of hours as punishment for lying and disobeying. He said that on Thursday, his father gave him some cereal and an orange and bread and water before he left for work. According to S.R., he was allowed to go and get something else to eat if he finished the bread and water.
Defendant and S.R.'s mother denied that defendant ever punched S.R., forced him to kneel on raised nails, deprived him of proper nutrition or dropped him on his head. They admitted, however, that defendant punished S.R. on Wednesday evening by making him kneel in his room, although they denied that he had to kneel on the nails. They also testified that defendant had placed S.R. on a diet of bread, water and milk from Wednesday evening through Friday morning.
Dr. Benton stated that briefly kneeling on one's knees is an acceptable form of punishment and that when he examined S.R. on July 12, 1999, S.R. was not undernourished. Dr. Benton testified that five slices of bread, two glasses of water and one cup of milk over the course of a day was abusive and was maltreatment. The evidence indicates that S.R. had a little more than just bread, water and milk during the relevant period: Defendant testified that S.R. had pizza on Wednesday and, on Wednesday evening, defendant punished S.R. by giving him bread, milk and water. He stated that on Thursday morning, he gave his son some cereal and fruit along with bread, water and milk.
Sonya Noil testified that her husband punished S.R. by giving him bread, water and milk to eat and drink as his evening meal on Wednesday. She said that on Thursday morning she did not see S.R. so she did not know what he ate, but that he *308 had bread, water and milk for his evening meal on Thursday.
There was no eyewitness to testify that defendant committed the other incidents listed in the bill of information.
The State also introduced evidence that S.R. was whipped and spanked by defendant with a belt. S.R. testified that some of the marks on his back shown in the photographs happened when his father tried to hit him on his buttocks but that he moved, so that his father hit him on his back. S.R. stated that he usually got spanked on his buttocks. Defendant testified that he had spanked S.R. with a belt on his buttocks before.
As discussed above, Dr. Benton opined that S.R. had been intentionally hit with a belt forcefully enough to cause permanent scars.
Other than S.R.'s recanted statement, the only evidence showing that defendant committed any of the acts listed in the bill of information, other than the bread-water-milk diet, was hearsay testimony from Carlas Johnson and Detective Cummings.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La.C.E. art. 802. "[U]nobjected to hearsay which is the exclusive evidence ... is no evidence at all." State v. Sanders, 648 So.2d 1272, 1293 (La.1994), cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996), citing State v. Allien, 366 So.2d 1308 (La.1978).
Carlas Johnson testified (without objection by defendant) that S.R. told her he was made to kneel on nails. Detective Cummings, the case officer assigned to conduct the follow-up investigation, testified (without objection by defendant) that the road deputy who responded to the initial call stated that S.R. told him he had been punched in the chest, picked up by his ankles, dropped on his head, slapped in the face and had gone two to three days eating just bread, milk and water.
Based on the foregoing, we find that the evidence as a whole was sufficient to support the conviction of defendant for cruelty to a juvenile at the least by depriving the child of proper nutrition, although it was insufficient to support conviction based on the other acts alleged in the bill of information. The finding that the bread/water/milk diet was intentional mistreatment or neglect is a fact determination, which is solely the jury's province and which cannot be disturbed on appeal.
The evidence also was sufficient to establish that defendant had beaten S.R. with a belt hard enough to leave permanent scars, although that evidence went beyond the time-frame and acts alleged in the bill of information.

ASSIGNMENT OF ERROR NUMBER TWO

The State illegally expanded the bill of information by introducing evidence of conduct not charged in the bill of information.
Defendant asserts that admission of evidence concerning defendant's whipping the child with a belt prior to the time period alleged in the bill of information was error. He points out that the bill of information not only confined the alleged abusive conduct to July 7 through July 9, 1999, but also made no allegations of child abuse resulting from spanking or of belt and loop marks. Defendant argues that being made to defend against conduct not charged in an indictment or bill of information violates his constitutional rights under *309 La. Const. 1974, art. I, §§ 2, 9 and 10. He claims that the error in question is patent on the face of the record and had the effect of varying and illegally enlarging the bill of information to include a crime not charged in the bill.
The State argues that this issue is not properly before us because defendant failed to object at the trial of this matter to testimony or photographs regarding the whippings, as mandated by La.C.Cr.P. art. 841(A).
In his reply defendant asserts that this Court can review the issue because it is an error patent, the error resulted from ineffective assistance of counsel, and the prohibited testimony denied defendant constitutional due process. The focus of defendant's argument actually is that the trial court erred by not excluding evidence of other crimes, i.e., the whippings and spankings with a belt and a buckle.
The Louisiana Constitution of 1974 provides that an accused shall be informed of the nature and cause of the accusation against him. La. Const. 1974, art. I, § 13. That requirement is implemented by La.C.Cr.P. art. 464, which provides:
The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the Defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the Defendant to his prejudice.
Article 465, however, authorizes the use of specific short form indictments in charging certain offenses, including cruelty to juveniles. The constitutionality of the short forms has been consistently upheld by the Louisiana Supreme Court. State v. Baylis, 388 So.2d 713, 718-719 (La.1980); State v. Liner, 373 So.2d 121, 122 (La. 1979). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. La.C.Cr.P. art. 465, comment (A); State v. Baylis, 388 So.2d at 719; State v. Johnson, 365 So.2d 1267, 1270-1271 (La.1978).
In any event, the time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Gainey, 376 So.2d 1240, 1243 (La.1979). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. La.C.Cr.P. art. 465, comment (A); State v. Williams, 480 So.2d 721, 722, n. 1 (La.1985).
Open file discovery relieves the State of the necessity of answering a motion for a bill of particulars. State v. Ohrberg, 448 So.2d 1316, 1318-1319 (La.App. 1 Cir.1984). While the State is limited in its proof at trial by the facts recited in its bill of particulars, the bill of particulars forms no part of the indictment and need not be read to the jury along with the indictment. State v. Ford, 349 So.2d 300, 304 (La.1977).
In the instant case, the State filed a bill of information on January 6, 2000 which stated in pertinent part:
[T]hat ... Walter Noil ... between the 7th day of July and the 9th day of July 1999 ... violated R.S. 14:93 in that he did commit cruelty to a juvenile age 8, by punching the child and/or forcing the child to kneel on raised nails and/or depriving the child of proper nutriention *310 [sic] and/or dropping the child on his head[.]
The record contains defendant's pre-trial motions, including a motion for bill of particulars; however, the motions do not contain a stamp by the clerk of court indicating when they were filed. The certificate of service states that they were mailed on April 4, 2000. The record contains another set of pre-trial motions, including a motion for bill of particulars filed on April 25, 2001 and an order signed by the trial judge setting the hearing on the motions for May 9, 2000 and ordering the State to furnish answers to discovery and a bill of particulars and to produce documents on that date as well.
In his brief, defendant claims that, in response to the motion for bill of particulars, the State said that no other evidence would be introduced other than as outlined in the bill of information. The hearing on the motion was not transcribed, and the record does not contain an answer to defendant's motion for bill of particulars. However, neither does it contain an objection by defendant as to any failure to respond by the State. Further, the record indicates that the State gave defendant open file discovery, which he accepted.
On May 4, 2000, defendant filed a motion to quash the bill of information based on lack of jurisdiction over the offense, since the alleged acts occurred in Florida and not in Louisiana. There is no ruling in the record on this motion and the hearing was not transcribed; however, not only has defendant failed to complain of this omission, but also he entered trial without a ruling on the motion.
A review of the record indicates that defendant was charged in compliance with La.C.Cr.P. art. 465 A(21), which provides the following short form indictment for cruelty to juveniles: "A.B. committed cruelty to ______ C.D., ______ a ______ juvenile, ______ by ______ (describe act of cruelty)." Further, defendant filed a motion for bill of particulars that was satisfied by open-file discovery. During a bench conference at trial, both the State and the defense referred to the motion to quash the bill of information. The prosecutor said, "I said the incident that forms the basis of this prosecution occurred in July of 1999 within the Parish of Jefferson, but I also-you also had notice of these other things. You didn't file a motion to quash the use of those other things. You filed a motion to quash the bill of information, and I believe the record would bear that out." The judge responded, "I think he's right."
Based on the State's comments, it does not appear that the bill of information was "enlarged." The State simply introduced the challenged evidence as part of its case in an attempt to prove the allegations in the bill of information. On the other hand, even if the bill was enlarged by the open file discovery provided to defendant to include the whippings and spankings of S.R. with a belt, it appears that the State limited the incidents defendant could be found guilty of in its instructions to the jury.[5]
Based on the foregoing, we reject the post-verdict attack on the sufficiency of the bill. The bill gave defendant fair notice of the offense charged and set forth an identifiable offense.
*311 During trial, the State attempted to introduce into evidence photographs numbers ten, twelve, thirteen and fourteen; however, defendant objected, arguing that the photographs showed evidence of other crimes (scars on S.R.'s back) not charged in the bill of information and of which the State did not give him notice of prior to trial. The trial court sustained the objection, stated that there was no notice and excluded the photographs from evidence.
Before any witnesses took the stand on the second day of trial, defendant objected to Dr. Benton testifying about belt marks and other acts evidence and to the parts of the videotape in which S.R. discussed other acts evidence, i.e., being whipped in Florida. During the bench conference, the State told the trial judge that he gave notice to defendant of the other acts by giving him the photographs, the videotape and all information in his files, and that defense counsel accepted open file discovery.
Based on those representations, the trial judge reversed his previous ruling, stated that defendant was given notice (of the other acts), allowed the State to introduce photographs ten, twelve, thirteen and fourteen that were previously excluded from evidence, and allowed the State to question Dr. Benton about the beatings with a belt and to show the videotape.
In State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, the Louisiana Supreme Court set out the law pertaining to the admissibility of other acts by a defendant as follows:
Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial. It states in pertinent part:
Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state is required to prove the defendant committed these other acts by clear and convincing evidence. Id.; State v. Davis, 449 So.2d 466 (La.1984). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met. Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the other crimes *312 evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense responsive to it.
State v. Miller, 718 So.2d at 962.
A trial court's ruling on the admissibility of evidence pursuant to La.C.E. art. 404(B)(1) will not be disturbed absent an abuse of discretion. State v. Stepp, 28,868 (La.App. 2 Cir. 12/11/96), 686 So.2d 76, 79, writ denied, 97-0410 (La.6/30/97), 696 So.2d 1006.
In the instant case, defendant complained at trial that the trial court erred in admitting evidence of other acts, i.e., S.R.'s whippings and spankings with a belt and/or a belt buckle, because the State failed to comply with the procedural requirements of written notice mandated by State v. Prieur, 277 So.2d 126 (La.1973).[6] However, not every violation of pre-trial procedures, including Prieur violations, requires reversal. Before a defendant can complain of such a violation, he must show prejudice. State v. Pardon, 97-248 (La. App. 5 Cir. 10/15/97), 703 So.2d 50, 57, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207.
Based on a review of the record, we find that defendant failed to prove he was prejudiced by any violation. Although the State did not provide defendant with formal notice, defendant was well aware of the evidence against him. The assistant district attorney represented to the court that he gave defendant open file discovery, including the photographs, the videotape and all information in the file. Defendant did not deny this representation; in fact, he admitted that he had seen the photographs and the videotape and had just brought the videotape back to the state on the morning of trial. Accordingly, the trial court did not err in failing to exclude evidence of other crimes due to lack of notice to the defendant.

ASSIGNMENT OF ERROR NUMBER THREE

The State failed to prove an essential element of the crime, i.e., the age of the defendant.
Defendant argues that the State failed to allege in the bill of information and prove at trial an essential element of the crime, i.e., that the defendant was over seventeen years of age at the time the alleged crime was perpetrated.
In State v. James, 305 So.2d 514 (La. 1974), defendant was convicted of armed robbery. On appeal, the court noted an error patent concerning the validity of the indictment. The court stated that, under prior jurisprudence, the indictment was fatally defective because it failed to name the person who was robbed, an essential element of the crime of armed robbery. The court stated in pertinent part:
[W]here in fact an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where, as here, no objection was raised to it prior to the verdict, and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of *313 the pleadings and the evidence in the instant prosecution.
State v. James, 305 So.2d at 519-520.
The only element of the offense not included in the bill of information was the defendant's age. The bill gave the child's age, alleged specific acts of cruelty against the child, and identified the statute violated. Defendant did not object to omission of his age until his motion for new trial; he has not shown surprise or prejudice from the omission. Further, no defense to the charge was available to defendanta 27-year-old manon the basis of his age that might have been prejudiced by the omission. We find that the bill was not fatally defective. See, State v. Holstead, 354 So.2d 493 (La.1977); State v. Shelton, 545 So.2d 1285 (La.App. 2 Cir.1989), writ denied, 552 So.2d 377 (La. 1989).
Further, jury observation and circumstantial evidence can be used to infer the age of a defendant when no direct evidence of defendant's age is presented. State v. Day, 98-964 (La.App. 5 Cir. 3/10/99), 735 So.2d 56, 59; State v. Zihlavsky, 505 So.2d 761 (La.App. 2 Cir.1987); Shelton, supra; State v. Guidry, 95-897 (La.App. 3 Cir. 3/1/95), 651 So.2d 458. The defendant's physical appearance was open to view by the jury. Defendant admitted he was eighteen when he was arrested for possession of cocaine (and later convicted), and that he was nineteen the second time he was arrested for possession of cocaine. He testified that the first of these two felony convictions for possession of cocaine occurred in 1991. The evidence showed that defendant was married to the victim's mother, and that he had two biological children who resided with him. Further, he was tried as an adult.
Considering the foregoing, we find the evidence was sufficient to prove that defendant was over the age of seventeen at the time of the offense.

ASSIGNMENT OF ERROR NUMBER FOUR

The trial court committed reversible error by ruling that the State could introduce other crime evidence.
Defendant argues that the trial court erred by allowing the State to elicit other crimes evidence during defendant's testimony. During cross-examination, the State asked defendant the following question:
Q. Okay. Let's put this case aside for just a moment, and let's just talk about you and your background for just a moment. Would you be so kind as to share with this Jury your prior criminal history?
There was no objection by defense counsel and defendant then related his criminal history in open court.
Defendant is precluded from raising this issue on appeal, however, because he failed to lodge a contemporaneous objection on this ground during trial as required by La.C.Cr.P. art. 841. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.

ASSIGNMENT OF ERROR NUMBER FIVE

The defendant was prejudiced by ineffective assistance of trial counsel.
Defendant argues that his trial attorney did not provide him with effective assistance. Specifically, he contends that his trial attorney failed to file a post conviction motion to upset the verdict and that insufficiency of evidence deprived defendant of Constitutional due process; failed to object to evidence introduced by the State to prove uncharged conduct of the defendant, i.e., belt marks on the child *314 from whippings; failed to object to evidence of other crimes; and failed to move for a judgment of acquittal predicated on the State's failure to prove essential elements of the crime, e.g., failure to allege the age of the defendant and failure to prove the defendant's conduct caused "unjustifiable pain and suffering" to the child, an essential element of the crime charged.
In the interest of judicial economy, a claim of ineffective assistance of counsel may be addressed on appeal when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, citing State v. Peart, 621 So.2d 780, 787 (La.1993). The appellate record in this case contains sufficient evidence for us to consider this claim of ineffective assistance of counsel.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, cert. denied, 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La. App. 5 Cir. 7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, 636 So.2d at 1075.
First, regarding trial counsel's failure to file a motion to upset the verdict, defendant alleges that insufficiency of the evidence deprived him of Constitutional due process. Defendant was free to, and did, assign this issue as an error on appeal and this Court has addressed it. Therefore, defense counsel's failure to file a motion to "upset" the verdict is not ineffective assistance of counsel, because defendant suffered no prejudice.
Next, defendant argues his trial counsel was ineffective because he failed to object to evidence being introduced by the State to prove uncharged conduct of the defendant, i.e., belt marks on the child from whippings. As we stated previously, defendant strenuously objected before trial and during trial to evidence of whippings and belt marks on the child from whippings.
In a motion to quash the bill of information defense counsel argued that the 24th Judicial District Court had no jurisdiction over these offenses because they occurred in Florida. Before any witnesses took the stand on the second day of trial, defense counsel objected to Dr. Benton testifying about belt marks and other crimes evidence because of lack of notice. He also objected to the parts of the videotape in which S.R. discussed other crimes evidence, i.e., being whipped in Florida because the offenses occurred in Florida. The trial judge overruled defendant's objections because defendant had notice that the State was going to introduce the other crimes evidence. Although defense counsel did not object during Dr. Benton's testimony regarding the other crimes evidence, it is clear he did not do so because the court had already ruled that the evidence was admissible.
*315 We find that defense counsel was ineffective for making the wrong objection. Instead of objecting to the other crimes evidence because of lack of notice, he should have objected to it because it was irrelevant to the crimes with which defendant was charged in the bill of information. Alternatively, he could have argued that it was relevant, but should be excluded because the probative value was substantially outweighed by the prejudicial effect and confusion to the jury. La.C.E. arts. 401, 402 and 403.
However, defendant also has to show he was prejudiced by this deficiency. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. We find that the jury convicted defendant of cruelty to a juvenile based on the evidence regarding his improper nutrition, rather than upon the erroneously admitted evidence of whippings and belt marks. Therefore, defendant was not prejudiced by the deficiency.
Defendant contends that trial counsel was ineffective for failing to object to evidence of other crimes, which was elicited when the State asked defendant on cross-examination about his prior criminal history. Defendant's argument fails because the State is allowed to question defendant about his prior convictions, and any other testimony about other crimes which may have been elicited in error was harmless.
Defendant claims that his trial counsel was ineffective because the State failed to move for a judgment of acquittal, predicated on the State's failure to prove essential elements of the crime, e.g., the State's failure to allege in the bill of information the age of the defendant and the State's failure to prove the defendant's conduct caused "unjustifiable pain and suffering" to the child, which is an essential element of the crime charged. Even if defense counsel was ineffective for not moving for a judgment of acquittal based on those grounds, no prejudice has been shown, since both of these issues were reviewed on appeal in Assignments of Error Numbers One and Three.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals several nonreversible patent errors.
First, there is an irregularity in the arraignment, in that the record does not reflect that Noil was re-arraigned after bill of information was amended on May 29, 2000. Because Noil proceeded to trial without objection, however, he waived any irregularity in the arraignment. La. C.Cr.P. art. 555; State v. Richardson, 00-134 (La.App. 5 Cir. 9/26/00), 770 So.2d 454.
Second, the commitment/minute entry does not indicate that the jury was sworn, as required by La.C.Cr.P. arts. 788 and 790. However, because defendant has not raised jury irregularities in the trial court or on appeal, consideration of that issue is waived. State v. Wilkinson, 00-339, p. 13 (La.App. 5 Cir. 10/18/00), 772 So.2d 758.
Third, the trial court failed to wait the statutory time before sentencing defendant, but there is no express waiver of the sentencing delay by the defendant. Defendant's motion for new trial was denied on October 16, 2000 and his motion for reconsideration of his motion for new trial was heard and denied on October 31, 2000. On that same day, the trial court sentenced defendant to imprisonment at hard labor for seven years, although defendant did not waive sentencing delays prior *316 to the sentencing. The State filed a multiple offender bill of information, defendant admitted the allegations thereof, and on March 8, 2001, the trial court vacated the original sentence and sentenced defendant to imprisonment at hard labor for five years.
La.C.Cr.P. art. 873 provides in pertinent part:
If defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
When defense counsel began to argue his motion to reconsider motion for new trial, the trial judge stated, "Yeah, but it's the same argument. I mean, I denied your motion last time." Defense counsel stated that there was another case in the new motion. The State proceeded to argue that the new case is inapplicable to this case. After listening to the arguments of counsel, the trial judge denied the motion to reconsider motion for new trial and then sentenced defendant.
Based on the foregoing, we conclude that the trial court reopened and ruled anew upon the motion for new trial at the sentencing hearing, rather than merely clarifying its earlier ruling. In doing so the trial court failed to observe the required twenty-four-hour delay between the denial of a motion for new trial and the imposition of sentence.[7]
However, defendant has neither raised the sentence on appeal nor claimed he was prejudiced by the mistake. Accordingly, this error requires no corrective action. State v. Harbor, 00-1258 (La.App. 5 Cir. 11/28/00), 775 So.2d 1082, 1086.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.
NOTES
[1] The record contains no ruling on the first motion for new trial, which was filed by trial counsel. The lack of a ruling on that motion is irrelevant, however, because the new counsel filed another motion for new trial that resulted in a ruling.
[2] Defendant's motion for appeal was premature when it was filed after conviction and sentence, but before the sentence as a multiple offender. However, that procedural defect was cured by the subsequent resentencing. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351.
[3] Throughout the proceedings S.R. referred to defendant, Walter Noil, as his "dad," but in fact Noil is S.R.'s stepfather.
[4] The jury was removed from the courtroom following this testimony. The trial judge admonished S.R. to tell the truth and told him that, if he lied on the witness stand and the State proved it, he (S.R.) could be charged and punished for perjury. S.R. stated that he understood.
[5] The trial court instructed the jury that in order to convict defendant of cruelty to a juvenile, they must find that the defendant intentionally or in a criminally negligent manner, mistreated or neglected the child by punching him, and/or forcing him to kneel on raised nails, and/or depriving the child of proper nutrition, and/or dropping the child on his head.
[6] State v. Prieur also requires a pre-trial hearing; however, defendant in the instant case did not complain about the lack of one.
[7] See State v. Schmidt, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, 158. In that case, defendant filed a motion to reconsider denial of motion for new trial. The trial judge heard arguments relative to the motion to reconsider. The court held that the trial court "actually reopened and ruled anew upon the motion for new trial at the sentencing hearing rather than merely clarifying his earlier ruling," and that "since the trial court reopened and ruled on the motion, La.C.Cr.P. art. 873's twenty-four-hour time delay applied."