365 So.2d 1267 (1978)
STATE of Louisiana, Appellee,
v.
Kenneth JOHNSON and Sterling Winfield, Appellants.
No. 61932.
Supreme Court of Louisiana.
November 13, 1978.
Rehearings Denied January 26, 1979.[*]
*1269 Raymond A. McGuire, New Orleans, for appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Fred P. Harper, Jr., Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendants, Kenneth Johnson and Sterling Winfield, were jointly charged by bill of information with one count each of attempted armed robbery in violation of La.R.S. 14:27, 64, and five counts each of attempted second degree murder in violation of La.R.S. 14:27, 30.1 (1975), all allegedly arising out of a March 13, 1976, attempted armed robbery. After joint trial by jury, both defendants were found guilty on all six counts and received long consecutive sentences on each count.
Upon their appeals, the defendants rely upon twelve assignments of error. The most arguable of these concern (a) an allegedly unjustified restriction of cross-examination (Assignments 4 and 5) and (b) the trial court's failure to require the state to furnish by a requested bill of particulars which of the two statutory methods of committing attempted murder was charged, if known by the state. (Assignment 12).
For reasons to be stated below, we find the trial court's rulings in these respects to be erroneous, but we do not find that the errors were of reversible dimensions under the particular facts of the present case.
Limitation of Cross-Examination (Assignments 4 and 5)
Under the facts of this case (set forth in the discussion of Assignments 7 and 11 below), a crucial issue involved the identification by Officer Bullock of the defendant Winfield as being near the scene of the alleged attempted robbery when it occurred. The witness described the individual as wearing a sailor-type hat.
Sustaining state objections, the trial court cut off cross-examination by the defendant's counsel concerning the witness's observation of the defendant's ears and forehead ("what type of forehead did he have?" was asked, after the witness stated he could see the individual's forehead).
The questions were obviously proper, insofar as counsel was attempting to question the witness's ability to identify the suspect in what was an almost-fleeting observation at a distance. Limitations upon the important confrontation right of cross-examination, designed to test the veracity and accuracy of a witness's testimony, are ordinarily regarded as improper and as creating substantial prejudice, in the absence of excessive repetitiousness of questioning or some other specifically recognized principle which is clearly applicable. See, e. g., State v. Senegal, 316 So.2d 124 (La.1975).
*1270 Ultimately, and with some hesitation, we do not find to be reversible the clear error presented by this assignment (Assignment 4). By the remainder of the cross-examination, the accused's counsel was sufficiently able to test the witness's ability to observe and his memory of his observation, so as not to sustain substantial prejudice by the ruling in question. By further questioning, the accused's counsel was enabled to bring home to the jury the opportunity to observe and the memory of his observation, or lack of it, by this witness.
Again, by Assignment 5, the defendant's counsel complains that he was not permitted to ask certain questions of a physician who had treated Johnson after his wounding, and had identified his blood-type as "A". (A police technician identified the bloodstains in Winfield's vehicle, the alleged getaway car, as type "A").
The defense counsel asked this physician if he knew what percentage of the population had type "A" blood. The obvious purpose of this query was to suggest that the blood in Winfield's vehicle could have come from many other persons than Johnson.
The doctor replied, "I can't give you an exact percentage." The attorney then asked, "Do you have any idea?" The trial court cut the attorney off, noting inaccurately that the doctor had said "No", and further prevented the doctor from replying to a question as to whether, "for instance," a certain percentage of the population ("about 45%") had a certain blood-type, with the admonition "Don't go back on that subject again. I'm warning you."
Again, we are cited to no authority which would justify the limitation of cross-examination upon this obviously relevant issue.
Ultimately, however, we again do not find reversible error in this assignment (Assignment 5), principally because in the later examination of the police technician the defendant's counsel was able to develop for the jury's consideration his point that 40% of the population has blood type "A" and that there is no way of identifying from what person came the "A" type blood on the alleged getaway vehicle interior.
We have ultimately concluded that the arbitrary rulings restricting cross-examination are not reversible under the circumstances of this case. We do not imply that we approve them or that in the future reversal may not be required in order to effectuate the constitutional confrontation right of cross-examination when the accused has been deprived of it, as a substantial violation of his constitutional and statutory rights. Cf. La.C.Cr.P. art. 921.
Denial of Requested Bill of Particulars (Assignment 12)
The defendant was charged with attempted second-degree murder. At the time of the March, 1976 offense, second-degree murder could be committed in two ways: (1) the killing with specific intent; or (2) the killing when the offender was engaged in the perpetration or attempted perpetration of armed robbery (as here) and other serious crimes. La.R.S. 14:30.1, subsections (1) and (2) (as enacted by Act 380 of 1975).
The defendants applied for a bill of particulars to request the state to specify which of the statutory methods of committing the crime was charged, in order to permit them to prepare their defense. The state refused to furnish this particular, stating that it was not required to specify the subsection(s) under which it was prosecuting. The trial court ruled this answer sufficient.
The court was in error in this ruling. As stated in State v. Nelson, 306 So.2d 745, 747 (1975), "the bill of particulars is designed to permit the accused to obtain further information, in a proper case, regarding what the State intends to prove, in order that, in fairness, the accused may more properly defend himself."
The use of a short-form indictment, as in this case, contemplates that the accused may procure details as to the alleged statutory method(s) by which he committed the crime charged through a bill of particulars. Official Revision Comment (b), La.C. Cr.P. art. 465 (authorizing short-form indictments). *1271 See also State v. Mason, 305 So.2d 523 (1974) and State v. Clark, 288 So.2d 612, 615-16 (1974) and jurisprudence therein summarized.
Nevertheless, as in Mason, we are not prepared to hold that reversible failure resulted from the state's rather obstinate refusal to specify that, under the obvious facts and other admissions of the particulars, it was proceeding under both subsections.[1] (Further, the state's answer might possibly be so construed.) Taken as a whole, the short-form indictments adequately informed the accused of the nature and cause of the prosecution, and the factual basis upon which it was founded, insofar as constitutionally and statutorily required in order to afford the accused a fair opportunity to defend against the charges brought against them.
Other Assignments
The other assignments do not present reversible merit:
Assignment 1: The trial court did not abuse its discretion in regulating the voir dire examination of the prospective jurors, by refusing to permit counsel to inform the prospective jurors regarding the penalties of the offenses charged. See State v. Brent, 347 So.2d 1112 (La.1977) and State v. George, 312 So.2d 860 (La.1975). Cf. State v. Abram, 353 So.2d 1019 (La. 1976) (discretionary penalties).
Assignment 2: The trial court's refusal to permit the accused to ask a hypothetical question of a witness, while arguably wrong, does not represent a reversible abuse of discretion.
Assignment 3: The police witness's unsolicited and inadvertent reference to "police photographs, B of I photographs," which the jury was immediately admonished to disregard, does not require reversal. It was not of a sufficiently prejudicial nature, as clearly involving the accused's police record or his involvement in non-related crimes, as not to be curable by the prompt admonition. See State v. Jones, 332 So.2d 466 (La.1976); also, State v. Hardy, 344 So.2d 1018 (La.1977).
Assignment 6: The prosecutor's rebuttal comment did not, in context, constitute an indirect comment upon the failure of the accused to take the stand.
Assignments 7 and 11: The defendants forcefully contend that there was no evidence of an attempted armed robbery, nor (consequently) of attempted murders in the perpetration of such an offense. Accordingly, they suggest their motions for a new trial should be granted.
The factual evidence shows:
At about 7:30 p. m., near closing time of a meat market, two armed men walked up to two employees cleaning up, grabbed one of them, and shot both of them. Previously, the owner and employees of the meat market had noticed four men hanging around the area, acting suspiciously, and had informed the police.
The police detectives had therefore earlier come to the scene in an unmarked car and conducted a surveillance. Prior to the incident described above, they had noted an automobile (later identified as the defendant Winfield's) moving slowly, with two men in the back peering about the neighborhood. One of the watching detectives radioed a request that other police officers in the vicinity watch for the vehicle. Shortly before the shooting incident, two officers cruising in the neighborhood, so alerted, noted the vehicle parked, with motor running, around the corner a block away; with *1272 a man they later identified as the defendant Winfield standing by the driver's side of the car.
The police detectives at the scene identified the defendant Johnson as one of the individuals who shot one of the employees. (The other, Porter, was killed in the subsequent shootout, see below.)
After the shooting of the employees, the detectives yelled, the two individuals (Porter and Johnson) commenced shooting at the officers, and in the shootout Johnson was wounded and Porter killed. Johnson and the other individuals escaped from the scene. The police, who had noted the license number of the vehicle, later arrested Winfield, who denied knowledge of the robbery or that he knew that blood was found in the interior of his vehicle (which he had parked away from his home).
The defendants principally contend that, because Porter and Johnson (the armed individuals who approached and shot the store employees) did not ask for money, there is no evidence that an armed robbery was intended. The defendant Winfield additionally contends that there is no evidence connecting him with the criminal intent of Porter and Johnson.
Under the evidence presented to the jury, it could reasonably infer that beyond a reasonable doubt Porter, Johnson, and Winfield were in a group which intended through Porter and Johnson to rob the store, with Winfield through his vehicle to provide the means of escaping from the scene after the intended robbery. Winfield, as a principal in the attempted armed robbery, La.R.S. 14:24, is thus criminally responsible for any killing which resulted from its attempted perpetration, La.R.S. 14:30.1(2) (1975).
We find no merit to these assignments of error.
Assignments 8 and 9: No abuse of discretion is shown by the trial court's failure to sever the joint trial of these two defendants nor of these five interrelated charges arising out of the same incident of attempted robbery.
Assignment 10: Article 1, Section 14, Louisiana Constitution of 1974 provides that all crimes punishable by life imprisonment must be charged by grand jury indictment. By this assignment, the defendants contend that the trial court should have sustained their motions to quash the bills of information filed by the prosecutor, because the offenses so charged in cumulation provided a penalty equal to or greater than the natural lifetimes of the two accuseds.
No crime charged was punishable by life imprisonment. The trial court therefore properly overruled the motions to quash. The mere fact that a sentence which may be imposed may be greater than the accused's life expectancy does not mandate charge by grand jury indictment, which is required only for crimes in which the statutory penalty is life imprisonment or death. State v. Qualls, 353 So.2d 978 (La.1977); State v. Williams, 341 So.2d 370 (La.1976).

Decree
Finding no merit to the assignments of error, we affirm the convictions and sentences.
AFFIRMED.
NOTES
[*] Dixon and Calogero, JJ., would grant a rehearing.
[1] As the decisions note, the state is not required to specify which of the statutory methods has been used to commit the crime or to choose between alternative methods equally applicable under the facts of the case. See also Comment, 12 La.L.Rev. 457, 460-62 (1952). The state should, however, so respond to the notice for the particulars, rather than refusing to answer it. Here, both subsections of the act were apparently applicable to the defendant Johnson (and possibly also to the defendant Winfield if the proof to be educed showed (it did not) that he was one of the would-be robbers who engaged in the gunfight). Insofar as the evidence educed at the trial, however, only subsection (2) applied to him; and perhaps the state should have so informed him, if the facts developed at the trial were known to it at the time of its response to the application for the bill of particulars.