388 So.2d 713 (1980)
STATE of Louisiana
v.
Terry BAYLIS.
No. 65327.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*715 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., H. Russell Davis, Asst. Dist. Atty., for plaintiff-appellee.
Emmons, Reeves & Henry, Joseph A. Reeves, Jr., Jonesboro, for defendant-appellant.
DIXON, Chief Justice.
The defendant was convicted of second degree murder (R.S. 14:30.1) and sentenced to serve life in prison without benefit of parole, probation or suspension of sentence for a period of forty years.
In this appeal the defendant submits for our consideration twenty-nine assignments of error, grouped into eight arguments.
The evidence at trial indicates that the defendant and his estranged wife Lydia paid a visit to an attorney in Arcadia, Louisiana on May 20, 1978 to discuss the terms of their separation. The couple then went to Shreveport to try to dispose of their mobile home. After leaving Shreveport they drove to a secluded spot near Ringgold, Louisiana where they apparently had sexual intercourse. Before leaving the area, however, the couple began to argue, resulting in defendant pulling out a pistol, striking his wife, and then shooting her *716 several times. Her body was discovered some three weeks later, and the defendant was arrested along with his father, who was implicated as an accessory for having helped the defendant dispose of the victims's car.
Assignments of Error Nos. 2, 15, 16, 18-22, 24-26
By these assignments the defendant challenges the admission of statements he made to law enforcement officials, and the admission of evidence allegedly obtained as a result of those statements.
The day after defendant and his father were arrested, they were visited in their cell by Arvis Whitman, who asked for permission to search their house for the gun. As the sheriff left, defendant said, "Sheriff, I need to talk to you in private." The sheriff agreed, and took the defendant into his private office, where the defendant made an oral statement. Later that same day the defendent made another statement to the sheriff's deputies and an assistant district attorney. The second statement was recorded.
Prior to trial, the defendant filed a motion to suppress both statements, which was denied. At trial only the first, unrecorded, statement was admitted. The defendant now contends that that statement was invalidly obtained because certain statements made by the sheriff on the subject of the defendant's father amounted to psychological coercion, and because the sheriff misled him into believing any statement he made would not be used against him.
We find the defendant's first contention to be without merit.
In State v. Weinberg, 364 So.2d 964 (La. 1978), this court held that certain statements made by a defendant in an effort to protect his father from disturbance in the course of a search of his house were admissible. In that case the defendant, on learning that a search was about to occur, offered to show the officer where certain contraband was located if the officers promised not to arrest or upset his father, who was suffering from a heart condition. In ruling that statements made after the police made such a promise were admissible, the court noted that the mere fact that a statement is motivated by a desire to protect a loved one does not render the statement inadmissible. We held that since the proposal for consideration of the defendant's father originated with the defendant, and was not suggested by the police to induce cooperation the statements were not coerced so as to render them inadmissible.
In the instant case the defendant testified that the sheriff told him, before he made the statement, that he ought to "get (his) dad off the hook," and continued to exhort him to do so until he confessed. The sheriff, on the other hand, stated that the defendant had initiated the discussion of the elder Baylis, and that he had simply agreed with the defendant when he stated that he had gotten his father into trouble. The sheriff did not recall telling the defendant that he ought to get his father "off the hook." Therefore, the testimony of the defendant and of the sheriff was essentially in conflict as to whether the sheriff used the defendant's father's incarceration in an effort to get a confession, or whether the defendant simply decided to make a confession out of concern for his father.
It is true that when it seeks to introduce a confession, the state must prove beyond a reasonable doubt that it was made freely and voluntarily, and must show affirmatively that it was not made under the influence of fear, duress, intimidation, menaces, inducements or promises. State v. Morvant, 384 So.2d 765 (La.1980); State v. Jackson, 381 So.2d 485 (La.1980); R.S. 15:451; C.Cr.P. 703(C). Nevertheless, conclusions of a trial court as to credibility of witnesses and the weight of testimony relating to voluntariness should not be overturned on appeal unless they are not supported by the evidence. State v. Morvant, supra; State v. Jackson, supra; State v. Gaines, 354 So.2d 548 (La.1978). The record in the instant case contains ample testimony by the sheriff supporting the trial court's conclusion that the statement was made freely and voluntarily, and that the *717 defendant's will was not overborne by police tactics designed to prey on the defendant's concern for his father.
Nor is there merit in the defendant's contention that he was misled into believing that anything he said would not be used against him. The basis of that contention is that, prior to taking the statement, the sheriff told the defendant that the statement was not being recorded, and that the room was not bugged. The defendant was unable to say, however, that he was under the impression that only recorded statements could be used. The sheriff testified that before the statement was made, he informed the defendant of his Miranda rights, including his right to remain silent, and that he had warned the defendant that anything he said could be used against him. Since the record reveals that the defendant was fully informed that his statements could be used against him, and does not reveal any action by the sheriff from which the defendant could have reasonably made a contrary inference, there is no merit in the contention that the defendant was misled into believing his statement would not be used.
The defendant's second statement, which was recorded, was made to various police officers and an assistant district attorney later that same day. The assistant district attorney was summoned at the defendant's request to explain the law relating to first and second degree murder and manslaughter. When he arrived, the defendant offered to make a statement if the state would agree not to prosecute his father or a third person whose identity was not disclosed, and to charge the defendant with a lesser offense than first degree murder.
As noted above, this recorded statement was not introduced into evidence at trial, so the defendant was not prejudiced by the trial court denial of the motion to suppress it. The defendant argues, however, that evidence seized as a result of his statements (in particular the murder weapon) should have been suppressed. The murder weapon was in fact introduced at trial, after the court denied a motion to suppress.
As noted in the discussion above, the defendant's first statement made to the sheriff was not improperly obtained. Nor did the defendant prove that the statement he made later in the day was such that it tainted the subsequent discovery by the state of the murder weapon. The evidence at the motion indicates that the proposal that the defendant make a statement in return for a promise that the defendant's father not be prosecuted was advanced by the defendant and was not suggested by the police or the prosecutor. There is no evidence that the state's representatives sought to use the elder Baylis' predicament as leverage in obtaining a statement. The defendant was not coerced so as to render the statement inadmissible. State v. Weinberg, supra. In addition, the record does not support the defendant's claim that the statement was induced by a promise that he would be charged with manslaughter. Although the defendant and the assistant district attorney discussed the possibility and the prosecutor may have told the defendant that he would discuss the matter with his superior, the defendant himself admitted that before the statement was made he was told specifically by the assistant district attorney that the charge would be second degree murder. Therefore, although the defendant might have hoped that the charge would be manslaughter, that hope was not shown to have been inspired by any promise from the assistant district attorney. The record does not support the contention that the statements defendant made to the police were improperly obtained, and the trial court did not err in denying his motion to suppress the murder weapon.
These assignments of error lack merit.
Assignment of Error No. 27
By this assignment the defendant complains of the trial court's refusal to give certain special charges to the jury. C.Cr.P. 807 provides:
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. *718 It need not be given if it is included in the general charge or in another special charge to be given."
Requested special jury charge # 7 contained the definition and penalty for manslaughter as defined by R.S. 14:31. Since the record shows that the trial court included the definition of that crime in its general charge to the jury, there was no error in his refusal to give this special charge. The requested special charge # 4 would have instructed the jury to "completely disregard" any physical evidence and any testimony relating thereto if it found that the physical evidence was obtained by information given to the state in a statement by the defendant that was inadmissible because of promises or inducements. In State v. Anderson, 229 So.2d 329, 339 (La.1969), this court stated:
"A determination of the admissibility of a confession lies within the exclusive province of the trial judge. Once the trial judge rules the confession admissible, the jury has no authority to reject it as incompetent....
It is true the jury must determine the weight to be accorded a confession..."
Therefore, the trial court did not err in refusing to instruct the jury that it should make an independent determination of the defendant's statements, or in refusing to instruct the jury as to the weight to be given physical evidence introduced at trial.
The refusal of the trial court to give requested special instruction # 6 presents a more serious question. In that requested instruction the defendant sought to have the court inform the jury that a verdict of guilty to a charge of second degree murder carried a mandatory penalty of life imprisonment. That refusal is contrary to State v. Prater, 337 So.2d 1107 (La.1976); see State v. Monroe, 364 So.2d 570 (La.1978) and State v. Milby, 345 So.2d 18 (La.1977). The record only discloses that the defendant merely objected to the court's refusal to give this and other requested instructions, and did not, as required by C.Cr.P. 841, state the grounds for his objection. The defendant is required to state the basis of his objection to the trial court so that the trial court will have an opportunity to rule on the objection and to avoid or cure any error. State v. Lewis, 353 So.2d 703 (La. 1977).
We will not reverse on the record before us.
Assignments of Error Nos. 1, 3 and 28
By these assignments the defendant contends that he was prejudiced by the state's failure to specify under which section of R.S. 14:30.1,[1] relative to second degree murder, it was proceeding.
Our Constitution provides that an accused shall be informed of the nature and cause of the accusation against him. Art. 1, § 13. That requirement is implemented by C.Cr.P. 464 which provides:
"The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a *719 conviction if the error or omission did not mislead the defendant to his prejudice."
C.Cr.P. 465, however, authorizes the use of specific short form indictments in charging certain offenses, including second degree murder. When those forms are used it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. State v. Johnson, 365 So.2d 1267 (La.1978).
In the instant case the defendant requested a bill of particulars simultaneously with his motion to quash the indictment on the grounds of the state's failure to specify the section of the statute under which it was proceeding. Neither the motion to quash nor the motion for a bill of particulars asked the state to designate the section of R.S. 14:30.1 under which defendant was charged.
In the answer to the motion for a bill of particulars, the defendant was informed by the state that defendant was accused of shooting his wife several times with a handgun. The defendant was also provided with a transcript of his recorded confession, which set out the facts under which the state was proceeding. In addition, prior to the start of trial the prosecutor told the defendant's counsel in open court that the state was proceeding under § B of R.S. 14:30.1. Defendant was fully informed of the nature and cause of the accusation against him.
These assignments lack merit.
Assignment of Error No. 5
By this assignment the defendant complains of the trial court's denial of his challenge for cause of juror Rayford G. Loflin. On voir dire examination that juror stated that he was familiar with the defendant and his father, and also with the victim and her father. He had worked with the victim's father for some fourteen years, and lived two or three miles from the defendant's father. His wife had cared for the child of the defendant and victim on one occasion, but that was the extent of his social relationship with the participants of the case. Mr. Loflin stated that although he would be uncomfortable on a jury in a case in which he was acquainted with the persons involved, he thought that he could be a fair juror, and require the state to prove beyond a reasonable doubt that the defendant was guilty. The tenor of his responses to questions on voir dire was that although he would prefer not to be on the jury, he felt that if he was chosen he could be fair and impartial, and that he could follow the court's instructions. Since the defendant did not show either that the juror would not be impartial, or that his relationship with the persons involved would influence him in arriving at a verdict, the trial court did not err in denying the challenge for cause. C.Cr.P. 797.
This assignment of error lacks merit.
Assignment of Error No. 6
The defendant was originally charged by grand jury indictment with first degree murder. The charge was amended by the district attorney to second degree murder. At the beginning of the trial when the clerk read the indictment to the jury, he correctly read the front of the document which indicated that the charge was second degree murder. In reaching the back of the indictment, however, he stated that the defendant was charged with first degree murder. In so doing the clerk apparently erroneously read the first charge, which had been lined through, instead of the later charge which had been typed in the space above the original charge. The defendant moved for a mistrial, arguing that the defendant was prejudiced because the jury had been informed that the defendant had originally been charged with first degree murder. Alternatively, he requested that the jury be told that the clerk had erroneously read the charge. The court denied the motion for a mistrial, but admonished the jury as requested. The defendant now reiterates his contention that he was prejudiced because the jury was informed that he was originally charged with first degree murder.
That argument is without merit. The jury was not in fact informed that the defendant had been originally charged with *720 the more serious offense. Instead the jury was told by the trial court that the clerk had erroneously read the charge. There was nothing in the record to suggest to the jury that such had not been the case, or that the members of the jury did not believe what the court told them. The court's admonition negated any inference that the jury might have drawn from the erroneous reading, and thus dispelled any prejudice that such an inference might have created in the mind of the jury.
This assignment of error lacks merit.
Assignments of Error Nos. 7, 8, 9 and 10
By these assignments the defendant complains of the admission of statements he made on the ground that the state failed to provide notice of its intent to use the statements as required by C.Cr.P. 768. That article provides:
"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
The basis of defendant's objection to the statements at trial was that none of the various statements he had made were admissible, because prior notice had not been given. The state took the position that notice had been given in its answers to the defendant's discovery motion. Defense counsel took the position that some sort of special pleading was required, and that the state was required to inform the defense of the nature of the statements. In brief to this court the defendant appears to concede that that position is unfounded, but contends that a written statement[2] was introduced at trial, without any notice whatsoever. Whatever merit the defendant's argument may theoretically have, however, careful review of the record indicates that no such written statement was ever introduced.
These assignments of error lack merit.
Assignment of Error No. 11
In questioning Deputy Sheriff Kennedy as to a statement made by the defendant, the prosecuting attorney, after hearing the substance of the statement, stated: "Well, this statement is inconsistent with the first statement he gave, is that correct?" Defense counsel made an objection to the question, on the ground that it called for a conclusion on the part of the witness. The objection was sustained. Questioning proceeded without further action on the part of the defense counsel, such as a request for a mistrial or an admonition from the court. On appeal the defendant argues for the first time that the prosecution attorney's remark amounted to "prosecutorial overreaching," and that his conviction should therefore be reversed.
The question, although arguably improper in form and content, did not fall within the specific grounds for a mistrial under C.Cr.P. 770. Nor did the question amount to prejudicial conduct that would make it impossible for the defendant to obtain a fair trial, which would be grounds for a mistrial under C.Cr.P. 775. The defendant may have been entitled to an admonition from the trial court, under C.Cr.P. 771, which provides for an admonition when an irrelevant or immaterial remark of such a nature that it might create prejudice against the defendant, is made by the district attorney within the hearing of the jury. The defendant did not request such an admonition, however. Although this court has held that where a defendant objects to improper remarks and the objection is overruled, the defendant is not required to make a useless motion for an admonition or a mistrial to preserve his rights on appeal, State v. Hamilton, 356 So.2d 1360 (La. 1978), in cases where the defendant's objection is sustained, and the court is presumably willing to give him whatever relief to which he is entitled, there is no reason the defendant should not be required to request an admonition, if he wants one. Since the court acted properly in sustaining the defendant's objection, and the defendant *721 thereafter failed to request an admonition or mistrial, the defendant cannot now claim that the remark was prejudicial.
This assignment of error lacks merit.
Assignment of Error No. 13
At trial evidence was elicited from Donavan Wiggins as to an encounter between him and the defendant in which the defendant offered to "get rid of" someone for Wiggins if Wiggins would "get rid of" Lydia Baylis. The defendant objected to that testimony on the ground that the state had not given notice as required by C.Cr.P. 768 for the introduction of inculpatory statements. On appeal the defendant reurges that objection, and, in addition, argues that the testimony amounted to evidence of crimes other than the one for which the defendant was being prosecuted, and, therefore, under R.S. 15:445-6 and State v. Prieur, 277 So.2d 126 (La.1973), the state was required to furnish in writing to the defendant a statement of the acts or offenses it intended to offer, specifying the exception to the general rule excluding such other crimes evidence under which it intended to offer the evidence.
The provisions of C.Cr.P. 768 apply when the state seeks to introduce a confession or inculpatory statement. In State v. Brent, 347 So.2d 1112, 1117 (La. 1977), this court stated:
"... For purposes of this article, the term `inculpatory statement' refers to defendant's out-of-state admission made after a crime has taken place which implicates defendant in its commission. State v. Brumfield, 329 So.2d 181 (La.1976); State v. Wells, 306 So.2d 695 (La.1975)...."
See also, State v. Berain, 360 So.2d 822 (La.1978). In this case the statement in question, made before the killing, was not a confession or inculpatory statement within that definition. Therefore, no notice was required under C.Cr.P. 768. In addition, the record indicates that the defendant was in fact informed of the state's intent to introduce the statement by its response to the defendant's discovery motion. There is no merit to the defendant's argument that notice was required under C.Cr.P. 768 and not properly given.
The defendant's alternative argument, that the testimony was evidence of other crimes, is predicated on a contention that his conduct in approaching Wiggins is proscribed by R.S. 14:28, relative to inciting to commit a felony. Even if that contention is accepted, the defendant is not entitled to relief under this assignment of error. It is well settled that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence, and the party objecting made known to the court the action which he desired the court to take, or his objection to the action of the court, and the grounds therefor. C.Cr.P. 841. A new basis for an objection may not be raised for the first time on appeal. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Quincy, 363 So.2d 647 (La.1978); State v. Williams, 343 So.2d 1026 (La.1977). Therefore, this contention must be deemed to have been waived by the defendant's failure to object to the absence of Prieur notice.
This assignment of error lacks merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
LEMMON, J., concurs.
DENNIS, J., dissents with reasons. [The dissenting opinion will be separately published.]
NOTES
[1] At the time of the offense that statute provided:

"Second degree murder is:
A. The killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill; or
B. The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure.
Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation, or suspension of sentence for a period of forty years."
The statute was construed so as to be constitutional in State v. Payton, 361 So.2d 866 (La. 1978).
[2] This is an apparent reference to the transcript of the defendant's oral recorded statement.