NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**14-118 consolidated with 14-119**

STATE OF LOUISIANA

VERSUS

WILFORD B. VANGURE
AKA WILFRED VANGURE
AKA WILFRED B. VANGURE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NOS. CR121534, CR122085
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Michael Harson
District Attorney
J.N. Prather, Jr.
Assistant District Attorney
Fifteenth Judicial District
P.O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
COUNSEL FOR APPELLEE:**
     State of Louisiana

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Wilford B. Vangure, aka Wilfred Vangure, aka Wilfred B. Vangure**

**Wilford B. Vangure**
**DOC #472801**
**Louisiana State Penitentiary**
**Walnut 1 B-L-47**
**Angola, LA 70712**
**IN PROPER PERSON**
       **Wilford B. Vangure**

**PETERS, J.**

A Lafayette Parish jury convicted the defendant, Wilford B. Vangure (also known as Wilfred Vangure and/or Wilfred B. Vangure), of second degree murder, a violation of La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. Thereafter, the trial court sentenced him to serve life in prison at hard labor, without benefit of probation, parole, or suspension of sentence on the second degree murder conviction; and to serve fifteen years at hard labor on the firearm possession offense. The trial court ordered that the sentences run consecutive to one another. On appeal, the defendant's appellate counsel has asserted three assignments of error, and the defendant has asserted three pro se assignments of error. For the following reasons, we affirm the defendant's convictions in all respects.

The second degree murder charge arises from a July 5, 2008 physical altercation which began in a Lafayette, Louisiana nightclub and ended with the shooting death of Paxton Simon.[1] The firearm possession charge arises because the defendant had previously been convicted of possession with intent to distribute cocaine, a violation of La.R.S. 40:967(A)(2). A Lafayette Parish Grand Jury indicted the defendant for the second-degree-murder offense, and the State of Louisiana (state) charged the defendant by bill of information with the firearm-possession offense.

### *Appellate Counsel's Assignment of Error Number One*

In this first assignment of error, the defendant argues that the evidence admitted at trial was insufficient to support his conviction of second degree murder.

---

[1] While both the grand jury indictment and bill of information state that the offenses occurred "on or about" Saturday, July 5, 2008, testimony from various witnesses set the actual shooting in the early hours of Sunday, July 6, 2008.

As it applies to this offense, second degree murder is defined as "the killing of a human being" "[w]hen the offender has the specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1). Additionally, the standard of review with regard to a sufficiency of evidence issue is well settled:

> When an appellate court reviews a sufficiency of the evidence claim, the standard applied is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). This standard has been codified by our legislature in Louisiana Code of Criminal Procedure article 821, which provides: "A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." When circumstantial evidence is used to prove the commission of the offense, Louisiana Revised Statute § 15:438 mandates, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Neal*, 00-0674, p. 9 (La.6/29/01); 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. *State v. Cummings*, 95-1377, p. 4 (La.2/28/96); 668 So.2d 1132, 1134. Rather, all of the evidence, both direct and circumstantial, must be sufficient under *Jackson* to convince a rational juror the defendant is guilty beyond a reasonable doubt. It is not the function of the appellate court to assess credibility or reweigh the evidence. *Id.*

*State v. Dorsey*, 10-216, pp. 42-43 (La. 9/7/11), 74 So.3d 603, 633, *cert. denied*, __ U.S. __, 132 S.Ct. 1859 (2012).

It is not disputed that on the evening of July 5, 2008, the defendant and his brother, Dustin Vangure (also known as "Ducky" and referred throughout the trial by that name) went to Night Caps, a Lafayette, Louisiana night club, and became involved in a physical altercation with Mr. Simon and some of his friends. The defendant and Ducky arrived first, and, at approximately 11:30 p.m., Mr. Simon, Jeremy Nelson, Nakavin Gardner, and a friend named Chuck[2] arrived at the club.

---

[2] Chuck's last name was not given by any witness.

2

Shortly thereafter, an altercation broke out initially between Ducky and Mr. Simon, but quickly escalated into a fight involving the victim and his friends on one side and the defendant, Ducky, and their friends on the other. Because of the altercation, Mr. Simon, Mr. Nelson, the defendant, and Ducky were expelled from the club. Approximately twenty-five minutes later, Mr. Simon lay in the parking lot of the Loose Caboose, another night club located approximately one block from the Night Caps club, dying from a gunshot wound to the shoulder.

The original altercation in the Night Caps club began when Mr. Simon and Ducky exchanged harsh words. Initially, the defendant attempted to calm the situation by getting between the two men and telling Mr. Simon that because they were all from the same community, their dispute did not have to be settled in the club. However, the defendant's peacemaking efforts failed when Ducky reached over his shoulder and sucker-punched Mr. Simon. A number of people joined the altercation, and, ultimately, the club security personnel threw Mr. Simon, Mr. Nelson, the defendant, and Ducky out of the club. Mr. Garner and Chuck were not ejected from the club and remained inside after the others were forced to leave.

Once outside, Mr. Simon and Mr. Nelson walked to the parking lot of the Loose Caboose where they had left their vehicle. Because the vehicle belonged to Chuck and because they left Chuck in the other club, Mr. Nelson returned three different times to Night Caps to find him. He was unsuccessful all three times, but when returning to the Loose Caboose on the last trip, he heard gunshots coming from the direction of the Loose Caboose. Thus, he did not see the actual shooting of Mr. Simon. The state did, however, produce two eyewitnesses to the shooting, Marissa Joseph and Officer Oren Haydell of the Lafayette City Police Department.

3

Ms. Joseph testified that she observed the defendant walking back and forth in the parking lot of the Loose Caboose at approximately 1:00 a.m. on July 6, 2008, as she and some of her friends were sitting in their vehicle in the parking lot. She recognized the defendant because she and he had attended both middle and high school together.[3] As she and her friends exited their vehicle and started walking towards the club, she observed the defendant walk up to a young man and "pull out something." While she did not see a weapon, she then heard three gunshots, and she and her friends ran back to their vehicle. According to Ms. Joseph, when the shooting occurred the two men were so close that they could reach out and touch each other.[4]

Officer Haydell was working mounted patrol in the early hours of July 6, 2008, and found himself directly in front of the Loose Caboose at approximately 1:00 a.m., when he heard several gunshots coming from the rear of the club. He immediately turned in the direction of the shots and had an unobstructed view of a black male holding a pistol, and saw the flash coming out of the gun's barrel on the last shot. Officer Haydell testified that the man immediately ran from the scene with he and his mounted partner in pursuit. As they chased the man through the neighborhood, Officer Haydell radioed for assistance and, before the two officers could apprehend the man, two other officers arrived on the scene and took him into custody. Officer Haydell identified the man taken into custody as the individual he saw discharge the firearm in the Loose Caboose parking lot, and, later that

---

[3] Although the prosecutor had Ms. Joseph indicate the distance between her and the defendant, he did so by walking to her and having her stop him at the proper distance. No estimate as to the distance in feet was noted for the record.

[4] There was testimony regarding how close Ms. Joseph was to the defendant at the time of the shooting, but the record does not reflect the actual distance.

4

evening, he selected the defendant's picture from a photographic lineup as the individual who fired the weapon.[5]

When initially taken into custody, the defendant had no weapon and was not wearing shoes. However, a subsequent search of the area between the Loose Caboose and where the defendant was apprehended resulted in the recovery of a semi-automatic Jennings .380 handgun and a pair of white Gucci tennis shoes. Subsequent scientific testing established the recovered handgun as the weapon used in the shooting of Mr. Simon, but DNA testing of both the handgun and tennis shoes did not connect the two items of evidence to the defendant.

### *Identification Element*

In this portion of his first assignment of error, the defendant asserts that the evidence was insufficient to identify him as the person who shot Mr. Simon. He argues that there existed many discrepancies between the testimony of Ms. Joseph and Officer Haydell concerning what they observed at the scene of the offense and that these discrepancies are sufficient to call into question their identity of him. Additionally, he notes that the DNA evidence did not connect him to the weapon used in the shooting or the recovered tennis shoes.

The defendant points out that Ms. Joseph testified at trial that the defendant was wearing a "wife-beater"[6] and jeans and was holding a T-shirt in his hand, when she saw him in the Loose Caboose parking lot, and that she vaguely recalled that he was wearing white tennis shoes. On the other hand, Officer Haydell testified that the defendant was wearing a white T-shirt and khaki shorts when he

---

[5] The lineup became necessary because of a communication breakdown within the Lafayette Police Department after the defendant was taken into custody. The defendant was ordered released by another officer on the mistaken belief that other officers had taken the shooter into custody at another location. Twenty to thirty minutes later, someone realized the error of releasing the defendant, thus prompting the lineup.

[6] A "wife-beater" is a man's white tank top. *See Merriam-Webster.com.*

5

first saw him in the parking lot and when he was apprehended after the chase through the neighborhood. The other officers involved in the defendant's apprehension confirmed that the defendant was dressed as described by Officer Haydell. Additionally, Ms. Joseph's trial testimony differed from the statement she initially gave to the investigating officers wherein she stated that she was not sure whether the defendant was wearing jeans or some other form of pants.

The defendant also points to the fact that Ms. Joseph admitted to a close friendship with the Simon family and that she did not speak to any of the family or law enforcement until a month after the shooting. Ms. Joseph attempted to explain the delay away by suggesting that she did not consider what happened to initially be any of her concern. However, she was clear in her testimony that she recognized the man she saw in the parking lot as the defendant and not Ducky because she knew the brothers well enough to tell them apart.

Concerning the chase immediately after the shooting, the defendant asserts that Officer Haydell's identification is suspect because he acknowledged that on at least two occasions he lost sight of the fleeing suspect as he ran between buildings. While Officer Haydell did testify that he temporarily lost sight of the fleeing suspect on two occasions, both times were short in duration and, on one of the times, he and his partner found the suspect crouching behind a building. It was at this location where the weapon and tennis shoes were discovered subsequent to the defendant being taken into custody. Additionally, a number of other officers arriving at the scene observed the general path taken by the suspect from the Loose Caboose to the point he was taken into custody. One of those officers involved in taking the defendant into custody, Captain Luraine Richard, of the Lafayette City

6

Police Department, testified that once he was handcuffed, the defendant blurted out, "Man, I didn't do this guy anything. He hit me in the mouth."

With regard to the DNA evidence, Carolyn Booker, a forensic DNA analyst with the Acadian Crime Lab testified that the DNA on the weapon matched that of the officer who recovered it and that it could have been transferred to the weapon through perspiration even though the officer was wearing gloves. With regard to the tennis shoes, Ms. Booker testified that a shoe is notoriously bad for DNA profiles because it is usually dirty and contains bacteria which destroy DNA. She found a DNA profile on one shoe and a mixed profile on the other and testified that both the defendant and Ducky were excluded from these profiles.

Finally, while Ms. Joseph testified that the defendant and Mr. Simon were very close together in the parking lot, Dr. Joel Carney, the Lafayette, Louisiana forensic pathologist who performed the autopsy on Mr. Simon, testified that there was no evidence of stippling on the victim's skin, and that "[d]istant range gunshot wounds" would not deposit soot or cause stippling on the skin surrounding the entrance wound. Officer Haydell testified that he had an unobstructed view of the shooting, but did not indicate the distance between the two men.

> In cases where the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *Neal*, 00-0674 at 11, 796 So.2d at 658 (citing *State v. Smith*, 430 So.2d 31, 45 (La.1983)). A positive identification by only one witness is sufficient to support a conviction. *Id.*; See *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La.6/27/03); 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La.4/14/04); 874 So.2d 66, 79.

*Dorsey*, 74 So.3d at 633-34.

While we recognize the inconsistencies pointed out by the defendant in his argument to this court, the jury heard all of the evidence and, although it may have questioned Ms. Joseph's credibility, it clearly found the testimony of the investigating officers, specifically Officer Haydell, to be credible. Applying the *Jackson* standard as codified in La.Code Crim.P. art. 821, and based on the evidence presented, we find that a rational trier of fact could have concluded that the state established beyond a reasonable doubt that the defendant was the individual who shot Mr. Simon.

### Specific Intent to Kill or Inflict Great Bodily Harm

Next, the defendant contends that the state failed to prove that he had the specific intent to kill or inflict great bodily harm. The defendant notes that three shots were fired and, despite the two men being a foot apart, only one bullet struck the victim. The defendant asserts that if the shooter had the specific intent to kill, three shots to the chest area would not have been difficult and would have been more likely than one of three shots striking the shoulder area. Further, Dr. Carney observed no stippling when examining Mr. Paxton's body, and the presence or absence of stippling is used to determine the range of fire. Based on these factors, the defendant asserts that the victim was not shot at close range.

> It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person. *State v. Pierre*, 02-277 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, *writ denied*, 03-2042 (La.1/16/04), 864 So.2d 626; *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La.4/25/03), 842 So.2d 391; *State v. Clark*, 93-1470 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, *writ denied*, 94-2715 (La.2/9/95), 649 So.2d 418.

*State v. Thomas*, 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, __ U.S. __, 132 S.Ct. 196 (2011).

Firing into a crowd is also indicative of an intent to kill. *State in the Interest of L.H.*, 94-903 (La.App. 3 Cir. 2/15/95), 650 So.2d 433.

Officer Haydell testified that while clearing people from the sidewalk alongside the Loose Caboose, he observed a man, whom he identified as the defendant, fire a shot from a handgun in the parking lot where the defendant was seen by Ms. Joseph speaking with a young man. The victim was found near that area with a gunshot wound to the shoulder, which caused his death. Based on this evidence, we find that the defendant's act of firing a handgun, whether it be directly at the victim or into a crowd, indicated his specific intent to kill.

### *Manslaughter*

Finally, the defendant argues that we should consider whether the shooting was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. The defendant asserts that if one of these mitigating factors is present, the responsive verdict of manslaughter is appropriate.

However, because we find that the evidence, when viewed in the light most favorable to the state, was sufficient to prove beyond a reasonable doubt that the defendant committed the crime of second degree murder, we need not address the defendant's claim relative to manslaughter.

### *Appellate Counsel's Assignment of Error Number Two*

The defendant's second assignment of error address his conviction of possession of a firearm by a convicted felon. In this assignment of error, the defendant contends that the evidence is insufficient to establish beyond a reasonable doubt that he was in possession of a firearm on the late evening of July 5, 2008, or the early morning of July 6, 2008.

9

Louisiana Revised Statutes 14:95.1 (footnote omitted) provides, in pertinent part:

> A. It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony . . . to possess a firearm or carry a concealed weapon.
>
> . . . .
>
> C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
>
> D. For the purposes of this Section, "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.

In *State v. Recard*, 97-754, p. 9 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, 329-30, *writ denied*, 97-3187 (La. 5/1/98), 805 So.2d 200, this court discussed the state's burden of proof in such cases as follows:

> To convict defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense. La.R.S. 14:95.1; *State v. Husband*, 437 So.2d 269 (La.1983); *State v. Tatum*, 27,301 (La.App. 2 Cir. 9/27/95); 661 So.2d 657. . . .
>
> La.R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). Although the existence of intent is a question of fact, it need not be proven as such, but may be inferred from the circumstances of a transaction. La.R.S. 15:445.

The defendant does not argue that he is not a convicted felon, and the evidentiary record before us establishes that on September 5, 2003, he pled guilty to possession with intent to distribute cocaine, a violation of La.R.S. 40:967. In

10

arguing the lack of evidence of this offense, the defendant relies on the same facts and discrepancies raised in his first assignment of error to argue that the state failed to negate any reasonable probability of misidentification in proving that he was in possession of a firearm at the time of the shooting. For the reasons previously expressed, we find that the state established beyond a reasonable doubt that the defendant was in possession of a handgun on the dates in question. We find no merit in this assignment of error.

### *Appellate Counsel's Third Assignment Of Error*

In his third assignment of error, the defendant contends that the trial court erred in permitting the state to reject his offer to admit or stipulate to the prior conviction and in permitting evidence of the name and nature of the prior conviction without admonishing the jury as to the limited use of the evidence of the prior conviction in arriving at verdicts in this case.

Prior to jury selection, the defendant's counsel informed the trial court that he planned to object to any reference to the underlying conviction relating to the firearm-possession charge and that the defendant was prepared to stipulate that he had been convicted of a predicate charge listed in La.R.S. 14:95.1. The state rejected the stipulation and asserted that it was entitled to inform the jury of the specific felony for which the defendant had been previously convicted. The trial court overruled the defendant's objection on this point. After presenting testimony of the prior drug conviction, the state offered the court minutes of the underlying offense as further evidence of his conviction. The trial court allowed the introduction of the minutes over the defendant's objection that the minute entry was not necessary, prejudicial, and had no bearing on the case. On appeal, the

defendant asserts that the trial court erred in allowing the minutes to be admitted as evidence. We disagree.

In order to prove a violation of La.R.S. 14.95.1, the state must prove that the defendant was previously convicted of one of the specific crimes enumerated in Subsection A of that statute. In this instance, the state was required to prove that the defendant was previously convicted of "any violation of the Uniform Controlled Dangerous Substances Law which is a felony[.]" La.R.S. 14:95.1(A) (footnote omitted). Although the defendant relies on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644 (1997),[7] the Louisiana Supreme Court has declined to follow *Old Chief* with regard to the state's admission of evidence pertaining to a defendant's conviction of a prior crime pursuant to La.R.S. 14.95.1. *State v. Ball*, 99-428 (La. 11/30/99), 756 So.2d 275. The court did so for two reasons, first, because the Supreme Court's decision was based on the specific language of 18 U.S.C. § 922, rather than on constitutional principles binding on the states, and, second, because La.R.S. 14:95.1 "defines the crime by specific enumerated prior offenses, contrary to the broad definition in the federal statute[.]" *Id.* at 278. In *State v. Davis*, 13-237, p. 16 (La.App. 5 Cir. 10/30/13), 128 So.3d 1170, 1171 (alteration in original), the court stated:

> We find no error in the admission of evidence relating to the April 5, 2010 shooting. Evidence that Defendant shot someone on April 5, 2010 with the same gun used to kill Ross six days later was relevant to establish that Defendant killed Ross by showing identity, opportunity and plan. The State was not required to accept Defendant's stipulation in lieu of presenting evidence. The State cannot be robbed of the moral force of its case merely because a stipulation is offered. *See State v. Watson*, 449 So.2d 1321, 1326 (La.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). "[T]he prosecution is entitled to prove its case by evidence of its own choice" and a defendant "may not stipulate or admit his way

---

[7] In *Old Chief*, 519 U.S. 172, the Supreme Court ruled that evidence of a prior conviction was prejudicial to a defendant charged under federal law with being a felon in possession of a firearm.

12

out of the full evidentiary force of the case as the government chooses to present it." *State v. Ball*, 99-428 (La.11/30/99), 756 So.2d 275, 280 (quoting *Old Chief v. United States*, 519 U.S. 172, 186-87, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

The defendant admits that the state cannot be denied the full force of its case by requiring it to stipulate to certain facts. However, because he sought to limit the state's use of the prior enumerated conviction, he argues that he was entitled to have the jury admonished that the prior conviction could only be considered as proof of an element of the offense. Based on the trial court's failure to so admonish the jury, the defendant argues that the trial court erred in denying his request to stipulate to the prior conviction.

In *State v. Sims*, 98-1304 (La.App. 1 Cir. 4/1/99), 734 So.2d 813, the first circuit held that a limiting instruction was not required when proof of a prior conviction was a requisite element of the charged offense. *See also State v. Bullock*, 604 So.2d 715 (La.App. 4 Cir. 1992). Additionally, the defendant did not request a limiting instruction nor object to the trial court's failure to give one. Thus, we find that the defendant's third assignment of error lacks merit or that he failed to preserve this claim for review. *See* La.Code Crim.P. art. 841.

### *Defendant's First Pro Se Assignment of Error*

In his first pro se assignment of error, the defendant argues that the trial court used elements not presented to the jury during his sentencing, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), which he claims violates his rights under the U.S. Const. amends. IV, V, VI, VIII, and XIV and La.Const. arts. 1, § 2, 3, 5, 13, 14, 16, 17, 19, 20, 22, and 24, and that the trial court erroneously denied him a presentence hearing to rebut allegedly false statements made by the prosecutor. However, as the defendant has failed to brief this

13

assignment of error, we consider this assignment as being abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

### *Defendant's Second Pro Se Assignment of Error*

In his second pro se assignment of error, the defendant argues that the trial court erred when it failed to rule on a motion to quash the indictment and bill of information prior to the trial on the grounds that they failed to comply with the particular mode or form prescribed by constitution or statute. He further argues that the indictment and bill of information used to charge him were short form documents, which failed to state the elements of the crimes charged, and that all short form indictments are unconstitutional pursuant to La.Code Crim.P. art. 464.

Although the record reveals that the defendant filed motions to quash in both trial court docket numbers on May 23, 2011, both motions sought to dismiss the charges against him based on the fact that DNA testing revealed that he had not handled the gun. Thus, motions to quash based on the inadequacy of the charging documents was never raised by the defendant prior to trial.

> The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. *State v. Gainey*, 376 So.2d 1240, 1243 (La.1979). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. *State v. Williams*, 480 So.2d 721, 722, n. 1 (La.1985); La.C.Cr.P. art. 465, Official Revision Comment (a). Given counsel's failure to file a motion to quash, the defendant arguably waived any claim based on the allegedly defective indictment.
>
> Notwithstanding the procedural bar to the claim, the Louisiana Constitution of 1974 provides that an accused shall be informed of the nature and cause of the accusation against him. La. Const. Art. I, § 13. That requirement is implemented by La.C.Cr.P. art. 464, which provides:
>
> > The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official

> or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
>
> La.C.Cr.P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including first degree murder. The constitutionality of short forms has been consistently upheld by this Court. *State v. Baylis*, 388 So.2d 713, 718-19 (La.1980); *State v. Liner*, 373 So.2d 121, 122 (La.1979). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. *Baylis*, 388 So.2d at 719; *State v. Johnson*, 365 So.2d 1267, 1270-71 (La.1978); La.C.Cr.P. art. 465, Official Revision Comment (a).

*State v. Draughn*, 05-1825, pp. 60-61 (La. 1/17/07), 950 So.2d 583, 623-24, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

Based on the foregoing, a review of the charging documents is necessary to determine whether they complied with the requirements of La.Const. art. 1, § 13, by informing him of the nature and cause of the accusation against him.

The defendant was charged by indictment for the crime of second degree murder, which read in part:

WILFORD B VANGURE
AKA WILFRED VANGURE AKA WILFRED B. VANGURE

> at the Parish of Lafayette on or about the 5th day of July in the year of our Lord, Two Thousand and Eight, 2008;
>
> did commit second degree murder of one PAXTON SIMON, in violation of the provisions of R.S. 14:30.1.

He was charged by bill of information for the crime of possession of a firearm by a convicted felon, which read in part:

WILFORD B VANGURE
AKA WILFRED VANGURE AKA WILFRED B. VANGURE

> at the Parish of Lafayette on or about the 5th day of July in the year of our Lord, Two Thousand and Eight, 2008;

WILFORD B VANGURE COUNT 1 ON OR ABOUT THE 5th DAY OF July 2008, being a person having been convicted of a felony, to-wit: POSSESSION WITH INTENT TO DISTRIBUTE COCAINE, DOCKET NUMBER 03385, State of Louisiana, Parish of Iberia, on September 5, 2003, did willfully and unlawfully possess a firearm, in violation of the provisions of R.S. 14:95.1[.]

Upon review, we find that the defendant was informed of the nature and cause of the two crimes based on the documents by which he was charged. The indictment complies with the short form for second degree murder provided by La.Code Crim.P. art. 465(32), which states, "Second Degree Murder—A.B. committed second degree murder of C.D." Furthermore, the bill of information substantially complies with the form provided by La.Code Crim.P. art. 463, which states:

> In the (Here state the name of the court.) on the _____ day of _____, 19___. State of Louisiana v. A.B. (Here state the name or description of the accused.).
>
> X.Y., District Attorney for the Parish of _____, charges that A.B. (Here state the name or description of the accused.) committed the offense of _____, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the state of Louisiana and against the peace and dignity of the same.

Accordingly, because we find that the defendant was notified of the nature and cause of the crimes he was accused of, we find no merit in this assignment of error.

### Defendant's Third Pro Se Assignment of Error

In his final pro se assignment of error, the defendant argues that the trial court erred in allowing tainted evidence into the record in the form of the DNA evidence given the fact that the only connection by DNA evidence to the weapon and tennis shoes was to the officer who collected the evidence. However, as the defendant has failed to brief this assignment of error, reference the record's page

number containing the basis for the alleged error, or to set forth any legal authority for his claims, we consider this assignment as being abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's convictions in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2—16.3.