NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 24-352

STATE OF LOUISIANA

VERSUS

ZACHARY MARKEY ADAMS, AKA ZACHARY ADAMS, ZACHARY
BATISTE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 186559
HONORABLE MICHELE S. BILLEAUD, DISTRICT JUDGE

**********

LEDRICKA J. THIERRY
JUDGE

**********

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles,
Judges.

AFFIRMED.

**Donald Landry, District Attorney**
**Frederick L. Welter, Assistant District Attorney**
**15th Judicial District**
**Parish of Lafayette**
**800 S. Buchanon Street, 6th Floor**
**Lafayette, LA 70501**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P.O. Box 52988**
**Shreveport, LA 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Zachary Markey Adams**

**THIERRY, Judge.**

On March 28, 2022, Jalen Anthony Walker was shot and killed in or near the driveway of Rontravon Bernard's home. Defendant, Zachary Adams, was Bernard's neighbor. The shooting was captured on video; though Defendant maintains "it is impossible to identity who shot Mr. Walker solely from the video." When the police arrived, Bernard was brought to the station and questioned. Eventually, Defendant was indicted for the second degree murder of Walker pursuant to La.R.S. 14:30.1.

On February 6, 2024, a jury trial commenced, and on February 8, 2024, a jury unanimously found Defendant guilty as charged. On March 13, 2024, the trial court sentenced Defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.

Defendant now timely appeals his conviction and sentence, asserting in one counsel filed assignment of error that there was insufficient evidence to prove he was guilty of second degree murder beyond a reasonable doubt. Defendant also asserts several *pro se* assignments of error.

## I.   *Sufficiency of the Evidence.*

In his sole counsel-filed assignment of error, Defendant claims that the evidence was insufficient to prove he was guilty of second degree murder beyond a reasonable doubt. Specifically, Defendant argues the State failed to prove beyond a reasonable doubt that he shot and killed Jalen Walker. In his third pro se assignment of error, Defendant also argues against the evidence adduced at trial. Since Defendant's claims are interrelated, we will address the issues simultaneously.

*Standard of Review*

The analysis for insufficiency of the evidence claims is well settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. It is the factfinder's role to weigh the respective credibility of the witnesses, and the reviewing court will not second-guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the *Jackson* standard of review. *State v. Richardson,* 425 So.2d 1228 (La.1983). The testimony of a single witness, if believed, and absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction. *State v. Pierre*, 14-1071 (La.App. 3 Cir. 5/6/15), 170 So.3d 348, *writ denied,* 15-1151 (La. 5/13/16), 191 So.3d 1054.

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in *Jackson*, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *See* La. Code Crim. P. art. 821(B); *State v. Ordodi*, 06-207 (La. 11/29/06), 946 So.2d 654, 660. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. La.R.S. 15:438; *State v. Wright*, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486,

> *writs denied*, 99-0802 (La. 10/29/99), 748 So.2d 1157, 00-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La. 1984).
>
> *State v. Coleman*, 17-1045, p. 6 (La.App. 1 Cir. 4/13/18), 249 So. 3d 872, 877, *writ denied*, 18-830 (La. 2/18/19), 263 So.3d 1155.

*State v. Simmons*, 23-661, pp. 2–3 (La.App. 3 Cir. 3/20/24), 381 So.3d 1033, 1036–37, *writ denied*, 24-510 (La. 12/27/24), ___ So.3d ___.

In *State v. Bright*, 98-398, pp. 22–23 (La. 4/11/00), 776 So.2d 1134, 1147, the supreme court discussed the law regarding identification:

> When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. *State v. Smith*, 430 So.2d [31] at 45 [(La.1983)]; *see also State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). The fact-finder weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). However, we are mindful that the touchstone of *Jackson v. Virginia*[, 443 U.S. 307, 99 S.Ct. 2781 (1979),] is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d [1305] at 1310 [ (La.1988)].

## *Second Degree Murder*

In the instant case, Defendant was convicted of the second degree murder of Jalen Walker. Louisiana Revised Statutes 14:30.1 defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).

3

*Defendant's Argument in Brief*

Defendant argues the State failed to prove beyond a reasonable doubt that he murdered Jalen Walker. First, Defendant claims even though the shooting was captured on video, it is impossible to identify the shooter. Second, Defendant contends that the State's eyewitness, Rontravon Bernard, admitted at trial that he never saw a gun or the shooter. According to Defendant, Bernard did not identify Defendant as the shooter until he watched the video. Third, Defendant asserts that Bernard previously identified someone other than him as the shooter and admitted to previously lying for his own benefit. As such, Defendant asserts Bernard's testimony is "completely incredible." Defendant argues the State introduced circumstantial evidence that placed him near the scene of the shooting; however, Defendant claims the evidence failed to overcome the fact that Bernard identified someone else as the shooter. Therefore, Defendant asserts that no rational trier of fact could have found beyond a reasonable doubt that he was guilty of murder and, as such, his conviction should be reversed.

*State's Argument in Brief*

In opposition, the State argues that it proved beyond a reasonable doubt that Defendant shot and killed Jalen Walker. The State summarizes its argument as follows:

> The direct evidence in this case alone is sufficient that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, thereby satisfying the *Jackson v. Virginia* standard. Eyewitness Rontravon Bernard clearly and unequivocally identified the defendant as the shooter, and pointed out on the Real Time Crime System surveillance video who the people were at the scene of the shooting. The jury was able to see the actual shooting and the victim falling to the ground, then the defendant running away from the scene back to his car. The Real Time Crime Camera System video then showed the victim's car leaving the Pee Wee Park parking

4

lot and heading east on Carmel Drive, which was corroborated by the CellHawk video and license plate reader cameras.

The State also argues that "defendant's flight to avoid apprehension indicated a consciousness of guilt," pursuant to *State v. Davies*, 350 So.2d 586 (La.1977). Thus, the State argues that it "proved beyond a reasonable doubt, with overwhelming evidence, that the defendant, Zachary Adams, intentionally shot Jalen Walker in the face and killed him on March 28, 2022."

*Testimony Adduced at Trial.*

During the two-day trial, the jury was presented with physical, photographic, documentary, and testimonial evidence. Deputy Larry Guidry of the Lafayette Sheriff's Office testified on March 28, 2022, he received a call regarding a "shooting in progress" at the Bridgewood Mobile Home Park located at 1912 Carmel Drive in Lafayette, Louisiana. Deputy Guidry stated when he arrived at the scene, he saw a black male—who was later identified as Jalen Walker—lying on the ground in a pool of blood in front of Lot 18. According to Deputy Guidry, life saving measures were performed on Walker to no avail. Deputy Guidry said after noticing a gunshot wound to Walker's face, he taped off the area and secured the crime scene. Deputy Guidry stated he later transported a witness by the name of Rontravon Bernard to the Criminal Investigations Divisions (CID) building for questioning.

Rontravon Bernard testified at the time of the incident he resided at 1912 Carmel Drive, Lot 18. Bernard stated that he knew both Jalen Walker and Defendant because they were also residents of the trailer park. Bernard noted that Defendant was his next door neighbor, and Walker lived a few trailers away. According to Bernard, he and Defendant were close friends.

Regarding the incident, Bernard testified as follows:

Q    Do you remember -- first of all, let's talk about that day, March 28, 2022. So[,] the early evening, did you come in contact with Zachary Adams that day?

A    I think I went to his house with my cousin. I'm not really sure[,] but I think I did.

Q    Okay. And now we're talking about after dinnertime, 6:00 p.m. Between -- after 6:00. Did you see Zachary Adams anywhere?

A    Yes, sir.

Q    Where?

A    To [sic] my house.

Q    Had you -- how did that happen?

A    I think he text [sic] or called me how far. I text [sic] how far to see where he was to pull up on me [sic].

Q    So[,] you knew he was coming?

A    It was either I knew he was coming or -- yeah,  I knew he was coming, the phone and all that [sic].

Q    Got you. All right. So[,] at some point he arrived at your trailer?

A    Yes, sir.

Q    And what happened next?

A    Him [sic] and Jay started arguing[,] I guess.

Q    So[,] him and Jalen Walker?

A    Yes, sir.

Q    Jalen Walker came near your trailer?

A    Yes, sir. He was -- he was walking his dog.

Q    Okay. And they started arguing?

A    Yes, sir.

Q    And after they argued, what happened?

A    When they was [sic] arguing, my padnuh [sic] rode away.

6

Q      I'm sorry?

A      Weedy rode away and then he -- [1]

Q      You said he rode away?

A      Yeah, he drove away.

Q      He got in his car?

A      Yes, sir.

Q      And he drove out of the trailer park?

A      Yes, sir.

Q      And what happened after that?

A      He came from the park from between the trailers back to my house.

Q      Is that the Pee Wee Park?[2]

A      Yes, sir.

Q      Okay. So[,] how did he come back from the Pee Wee Park to your house?

A      I saw him walking.

Q      Walking? All right. And what happened when he arrived back at your trailer?

A      Him [sic] and Jalen started arguing again.

Q      And then what happened?

A      I was picking up rocks throwing [sic] and then I heard a shot and Jalen [sic] body fell.

Q      And who fell?

A      Jalen.

---

[1]Bernard referred to Defendant as "Weedy."

[2]The official name of the park is Dalton "Pee Wee" Leblanc Park.

Q       Okay. How --

A       Jalen --

Q       -- far away were You when that happened?

A       About here to probably there.

Q       To where?

A       Probably a little bit further to where she is. Like --

Q       Would You say You were within 15 feet of where the shooting occurred?

A       Yes, sir.

Q       Did You see a gun?

A       I didn't see a gun. I didn't see no [sic] gun.

Q       When You -- You said You were picking up a rock?

A       And throwing it.

Q       And then You heard a gunshot?

A       And I looked up.

Q       And what did You see?

A       Weedy coming towards me and then he left. And Jay [sic]  body on the ground bleeding.

Q       Did You actually see Jalen fall to the ground?

A       Not really but like -- no, not -- I don't think I did. I don't think so. Like not fall but like --

Afterwards, the State showed Bernard the camera footage from the day of the incident.  The State asked Bernard to identify everyone in the video and to describe everyone's actions. Concerning the shooting, Bernard said:

Q       What did You just see in the tape?

A       I saw a flash come from Weedy and Jay [sic] body fall.

8

Q      And that was when You were bending over picking up a rock?

A      Yes, sir.

Q      And after Jay's body fell, what did Weedy do?

A      He came [sic] told me something and ran to the park.

The State then showed Bernard a copy of the text messages exchanged between him and Defendant on the night of the shooting. Bernard said he told Defendant, "You forgot about the cameras." To which Defendant responded, "Fuck." According to Bernard, Defendant called him later that night, but Bernard indicated that he did not want to be involved in the matter. Bernard further identified Defendant's car as the blue Buick LaSabre shown in State's Exhibit 5.

Bernard later reiterated that Defendant was the one who shot Walker, stating:

Q      . . . You testified absolutely who shot Jalen Walker in front of your trailer, didn't you? You testified earlier in the video, you testified who shot Jalen, or Jay?

A      Right.

Q      And did you have any idea that that was about to happen?

A      No, sir.

Q      Did you have anything to do with it?

A      No, sir.

Q      And how certain are you that it was Weedy that shot Jay?

A      Kinda positive looking at the video.

On cross-examination, Bernard admitted that he lied to the detectives about the identity of the shooter, as he previously told the detectives that "Black" was the shooter. To his defense, Bernard stated that at the time, he and Defendant were friends, so he lied to the detectives because he did not want Defendant to get into any trouble. Nonetheless, Bernard later testified that he sometimes referred to

9

Defendant as "Black" even though he stated that he always referred to Defendant as "Weedy." Bernard further stated that he did not actually see Defendant come from the park prior to the shooting. Instead, Bernard testified, "I mean if I -- I seen [sic] when he was coming across. I didn't see him come from the park[,] but I seen [sic] him from the trailer from, you know, that he walked from, walking towards my yard. I could sit on the porch and see across the street[,] but I can't see where the parking lot is in the park." Bernard also mentioned that Defendant told him not to call the cops after shooting Walker. Bernard ultimately testified that Defendant was the person who shot Walker.

Detective Lindsey Gautreaux, a crime scene investigator with the Lafayette Parish Sheriff's Office's Metro Crime Scene Unit, testified that on March 28, 2022, she received a call regarding a homicide at 1912 Carmel Drive. Detective Gautreaux said once she arrived at the scene, she photographed the area and collected evidence. Detective Gautreaux noted that while she was canvassing the area, she found a .40 caliber spent cartridge that appeared as though it had been "recently fired." Detective Gautreaux also stated she processed a blue Buick LaSabre registered to Defendant in connection with the case.

Doctor Christopher Tape, an expert in the field of forensic pathology, testified he performed an autopsy on Walker. Dr. Tape explained Walker's injuries as follows: "There's a gunshot wound. I describe it fully as a gunshot wound to the head at face and neck. And what I mean by that is the entry is on the face at the right chin and the exit's on the back of the right neck." According to Dr. Tape, the gunshot fractured Walker's jaw, damaged his carotid artery and jugular vein, and subsequently caused blood to seep into his airway, which caused him to bleed to

death. Dr. Tape determined Walker's cause of death to be a gunshot wound to the face and neck and Walker's manner of death to be a homicide.

Willis Zeno, a vehicle mechanic, testified on March 28, 2022, he received a call from Defendant inquiring if he was available to work on Defendant's music system. According to Zeno, Defendant had a wiring issue with his speakers. Zeno said shortly after speaking with him, Defendant appeared at his hotel in a blue Buick LaSabre. Zeno stated that after Defendant arrived, he and Defendant went to a truck stop so he could complete a repair on an eighteen-wheeler. According to Zeno, he completed the repair within a few hours, noting that he started around 11:00 p.m. and did not finish until around 1:00 or 2:00 a.m. Zeno stated once he finished repairing the eighteen-wheeler, he went back to his hotel with Defendant so he could rewire Defendant's speakers. Zeno testified that whenever they arrived back at the hotel, he went inside, but Defendant stayed in the car. Zeno stated that whenever he went back outside, Defendant was gone, so he moved Defendant's car to the back of the hotel and left it there. According to Zeno, Defendant asked him for a ride to Houston, Texas, before leaving, but Zeno refused. Zeno ultimately claimed that he did not know anything about the murder and indicated that he only intended to fix Defendant's car that night.

Captain Sonny Stutes, an expert in cellular records mapping and analysis, testified he assisted in locating Defendant after the shooting. According to Captain Stutes, he obtained Defendant's cellphone records from AT&T and used software called CellHawk, which maps out a person's cellphone records, to show Defendant's movements before and after the shooting. Captain Stutes said he also utilized the Real Time Crime camera videos to verify the information shown in the cellphone

records. Captain Stutes stated that he eventually found Defendant in Houston, Texas.

Ultimately, Captain Stutes testified that he opined that Defendant's cell phone was in the area of the crime scene shortly before and after the shooting, stating:

Q  So[,] you testified about shortly before the shooting you watched videos and then at 7:20 the vehicle goes into the trailer park?

A  Yes, Sir.

Q  At about 7:38 it exits the trailer park?

A  Yes, sir.

Q  It goes into the Pee Wee Park?

A  Yes, sir.

Q  And then at 7:50 you see the vehicle leave through the --

A  Correct.

Q  And can you tell us where the first phone call after the phone was reactivated?

A  The first connected phone call was at 7:51, I believe it's Line 107 on the phone records.

Q  And do you know who that was to through your investigation?

A  We were able to determine that phone call -- sorry -- phone number called belonged to Rontravon Bernard, one of the witnesses in this case.

Q  And we were able, through CellHawk, you testified that at some point while the vehicle was still in the trailer park, the cell phone disconnected from the network?

A  From the cell phone records, yes. I was able to determine that the phone call was not -- the phone, the device was not on the network because it went straight to voicemail for a period of about 14, 15 minutes.

Q  Fourteen minutes?

A  Yes.

Q      And then shortly after the car came out of the Pee Wee Park, that's when the phone went back on?

A      Yeah. The device reconnected to the network with a phone call.

*Analysis.*

We find after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Defendant was guilty of second degree murder beyond a reasonable doubt.  At trial, the State had an eyewitness, Rontravon Bernard, who identified Defendant as the individual who shot Jalen Walker.  Bernard's identification of Defendant as the shooter should be considered direct evidence of Defendant's guilt:

> Generally, direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue; whereas, circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Austin,* 399 So.2d 158 (La.1981). Where there is direct evidence, the trier of fact weighs the credibility of evidence and the reviewer under *Jackson* defers to that trier of fact, assuming the proven facts most favorable to the State. Where an essential element of the crime is not proven by direct evidence, La.R.S. 15:438 applies. That rule restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. *State v. Shapiro,* 431 So.2d 372 (La.1983) (on rehearing).

*State v. Lilly*, 468 So.2d 1154, 1158 (La.1985).

Although Defendant attacks the credibility of Bernard's testimony and claims that he is "an admitted liar," this court should not second guess a fact-finder's credibility determination. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.  Moreover, "[a] jury may 'accept or reject, in whole or in part,' any witness's testimony." *State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381. Thus, in this

case, the jury heard and accepted Bernard's testimony that Defendant shot and killed Jalen Walker.

Additionally, Captain Sonny Stutes testified that Defendant's cellphone records placed him at the crime scene prior to, during, and after the shooting, which corroborated Bernard's testimony that Defendant shot and killed Jalen Walker. Moreover, the State is correct in its assertion that Defendant's flight to Houston, Texas, after the shooting should be an inference of his guilt of the crime. Therefore, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Defendant intentionally shot and killed Jalen Walker. Accordingly, Defendant's assignment of error lacks merit.

## II. *Illegality of Sentence.*

In his first pro se assignment of error, Defendant argues that his sentence is illegal according to La.Code Crim.P. art. 872, which states "[a] valid sentence must rest upon a valid and sufficient indictment," because the indictment was defective. Specifically, Defendant asserts the indictment was insufficient because it did not state any essential elements or facts in accordance with La.Code Crim.P. art. 464.

In *State v. Draughn*, 05-1825, pp. 60–61 (La. 1/17/07), 950 So.2d 583, 623–24, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007), the Louisiana Supreme Court stated:

> The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. *State v. Gainey,* 376 So.2d 1240, 1243 (La.1979). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. *State v. Williams,* 480 So.2d 721, 722, n. 1 (La.1985); La.C.Cr.P. art. 465, Official Revision Comment (a). . . .
>
> Notwithstanding the procedural bar to the claim, the Louisiana Constitution of 1974 provides that an accused shall be informed of the

nature and cause of the accusation against him. La. Const. Art. I, § 13. That requirement is implemented by La.C.Cr.P. art. 464, which provides:

> The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

> La.C.Cr.P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including first degree murder. The constitutionality of short forms has been consistently upheld by this Court. *State v. Baylis,* 388 So.2d 713, 718–19 (La.1980); *State v. Liner,* 373 So.2d 121, 122 (La.1979). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. *Baylis,* 388 So.2d at 719; *State v. Johnson,* 365 So.2d 1267, 1270–71 (La.1978); La.C.Cr.P. art. 465, Official Revision Comment (a).

Considering *Draughn*, we must first review the charging document to determine whether it complied with the requirements of La.Const. art. 1, § 13, by informing Defendant of the nature and cause of the accusation against him.

In the instant case, the State charged Defendant by a bill of indictment, which read in pertinent part:

ZACHARY MARKEY ADAMS
AKA ZACHARY ADAMS, ZACHARY BATISTE
. . .

at the Parish of Lafayette on or about March 28, 2022

in that Zachary Markey Adams, on or about March 28, 2022, committed second degree murder of Jalen Anthony Walker, in violation of R.S. 14:30.1. (Second Degree Murder-Felony)

A review of the bill of indictment reveals that Defendant was informed of the nature and cause of the crime. Moreover, the bill of indictment complies with the short form as set out in La.Code Crim.P. art. 465(A)(32), which states: "Second

15

Degree Murder--A.B. committed second degree murder of C.D." Accordingly, Defendant was notified of the nature and cause of the crime he was accused, so Defendant's post-verdict attack on the sufficiency of the indictment is rejected.

### III. Lack of Jurisdiction.

In his second pro se assignment of error, Defendant claims that since he did not attend a formal arraignment and did not have a preliminary examination, the trial court never acquired legal or competent jurisdiction.

Jurisdiction refers to a court's authority to hear and decide a case. A district court has original jurisdiction over all criminal matters and exclusive original jurisdiction of felony cases. *See* La.Const. art. 5, § 16(A).

#### Arraignment

First, Defendant alleges that the trial court lacked jurisdiction because he never went to an arraignment. A review of the record shows that Defendant was present in court via Zoom on July 19, 2022, where he was represented by his trial attorney, who waived formal arraignment and entered a plea of not guilty on his behalf. Moreover, proceeding to trial without objection constitutes a waiver of formal arraignment. La.Code Crim.P. arts. 551, 555; *State v. Domingue*, 298 So.2d 723 (La.1974). Therefore, this argument lacks merit.

#### Preliminary Examination

Next, Defendant asserts that the trial court lacked jurisdiction because he did not have a preliminary examination. According to Defendant, a preliminary examination was required for the court to decide on whether there was enough probable cause to hold him over for trial.

Louisiana Code of Criminal Procedure Article 292 requires that the trial court shall order a preliminary examination if requested by the state or the defendant in

16

felony cases unless the defendant has been indicted by a grand jury. However, after the defendant has been indicted by a grand jury, the preliminary examination is limited to the perpetuation of testimony and the fixing of bail. La.Code Crim.P. art. 296. In this case, a preliminary examination was not required because Defendant was indicted by a grand jury. Accordingly, this argument lacks merit.

## IV. *Alleged Fraudulent Statements by Prosecutor.*

In his fourth pro se assignment of error, Defendant asserts that the prosecutor made fraudulent statements during closing arguments. According to Defendant, the prosecution stated that "he proved that Zachary Markey Adams showed specific intent to kill Jalen Walker when Mr. Adams walked up to Mr. Walker and pointed a gun and shot Mr. Walker in the face."

We note defense counsel failed to object to the prosecutor's statement made during closing arguments. Thus, Defendant is precluded from asserting any claims regarding the prosecutor's statement on appeal. La.Code Crim.P. art. 841; *State v. Young*, 344 So.2d 983 (La.1977).

## V. *Ineffective Assistance of Counsel.*

In his fifth pro se assignment of error, Defendant alleges that his trial counsel was ineffective. Ineffectiveness of counsel requires a showing of both deficient performance by counsel and prejudice to defendant's case. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Generally, a claim of ineffective assistance of counsel is relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. *State v. Miller*, 99-192 (La. 9/6/00), 776 So.2d 396, *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1196 (2001). The benchmark for judging a claim of ineffectiveness is whether the attorney's conduct so undermined

17

the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. *Strickland*, 466 U.S. 668.

Defendant claims his trial counsel was ineffective by failing to impeach the State's witness, Rontravon Bernard, at trial and by failing to show the jury the video evidence of Bernard stating that "Black" shot Jalen Walker. We find the issue presented can be resolved based on the record before the court. Although the video was not played for the jury, the record is clear defense counsel cross-examined Bernard and specifically asked him about "Black." Therefore, Defendant cannot meet his burden of proving counsel was deficient under *Strickland.*

## VI.   *Alleged Tampering of Evidence.*

In his final pro se assignment of error, Defendant claims that the trial court tampered with evidence by instructing a witness not to testify about any drug activity and by mentioning general intent when providing the jury with instructions.

Defendant fails to reference the record pages on which these events occurred or set forth any legal citation to support his claims in accordance with Uniform Rules—Courts of Appeal, Rule 2–12.4. Therefore, Defendant failed to properly brief this assignment of error, and this assignment of error is deemed to be abandoned.

## VII.  *Errors Patent.*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one error patent involving the trial court's advisement of the time period for filing post-conviction relief. Additionally, the minutes of sentencing are in need of correction.

First, the trial court did not accurately advise Defendant as to the time period for filing post-conviction relief. Defendant was advised that he had "two years from the date [his] sentence becomes final" to file for post-conviction relief. According

18

to La.Code Crim.P. art. 930.8(A), the time period for filing post-conviction relief is "two years after the *judgment of conviction and sentence* has become final[.]" (emphasis added). Thus, the advice given at sentencing was only partially accurate. The trial court's failure to accurately advise Defendant as to the time period for filing post-conviction relief, however, has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, La.Code Crim.P. art. 930.8 does not provide a remedy for an individual defendant who is not told of the limitations period.

This court, as has been done by the first, second and fifth appellate circuits, will have this opinion serve as notice to Defendant of the correct time limitation for filing an application for post-conviction relief. *State v. Folse*, 23-1299 (La.App. 1 Cir. 9/20/24), __ So.3d __, __ (2024 WL 4245979); *State v. Franklin*, 23-524 (La.App. 5 Cir. 8/28/24), ___ So.3d ___ (2024 WL 3963967), *clarified on reh'g*, 23-524 (La.App. 5 Cir. 9/19/24) (unpublished opinion) (2024 WL 4247537); *State v. Green*, 54,955 (La.App. 2 Cir. 4/5/23), 361 So.3d 546.

Additionally, the minutes of sentencing fail to reflect the trial court's imposition of the life sentence at hard labor. A conflict between the transcript and minutes is to be resolved in favor of the transcript. *See State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we order the district court to amend the minutes of sentencing to correctly reflect the trial court's imposition of the sentence at hard labor.

**DECREE**

For the foregoing reasons, Defendant's conviction and sentence are affirmed. This court advises Defendant that, pursuant to La.Code Crim.P. art. 930.8(A), no

application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.Code Crim.P. arts. 914 or 922. Additionally, this court orders the district court to amend the minutes of sentencing to correctly reflect the trial court's imposition of the sentence at hard labor.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.